**ROLAND A. WILSON AND ASSOCIATES, Appellant,**

v.

**FORTY–O–FOUR GRAND CORPORATION,**
**Appellee.**

**No. 2–57610.**

Supreme Court of Iowa.

Nov. 17, 1976.

H. Randy Duncan and Steven K. Scharnberg, of Duncan, Jones, Riley & Finley, Des Moines, for appellant.

Allen Whitfield and David L. Phipps, of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

This appeal involves an action by an architectural firm for the unpaid balance of its fee. Plaintiff Roland A. Wilson and Associates is an architectural firm headquartered in Denver, Colorado. For convenience Roland A. Wilson will be treated as if he alone were plaintiff. Defendant Forty-O-Four Grand Corporation is an Iowa Corporation which employed plaintiff as architect in connection with construction of a luxury apartment building in Des Moines. During the course of construction, plaintiff was paid all but $6825 of his $27,300 fee. When defendant refused to pay the $6825 balance, plaintiff brought an action on the employment contract seeking recovery of that amount. The trial court found plaintiff failed to prove his performance of his contractual obligations and his entitlement to further payment under the contract. We affirm.

The questions presented for review are whether plaintiff had the contractual duty found to have been breached and whether the evidence supports the judgment.

The terms of the contract are not in dispute. It was entered in April 1966. Plaintiff agreed to prepare plans and specifications for the job and to supervise the work. Regarding supervision, the contract provided:

> The architect will make sufficient trips to the job to see that the plans and specifications are followed and will endeavor to guard the owner against defects and deficiencies in the work of the contractors, but he does not guarantee the performance of their contracts. The supervision of an architect is to be distinguished from the continuous personal superintendence to be obtained by the employment of a clerk-of-the-works.

While carrying out his supervisory responsibilities during the course of construction, plaintiff discovered in August 1969 that the windows leaked. Plaintiff testified that in testing one of the windows with a water hose, "We * * * found out it leaked like a sieve." Defendant was then notified. In seeking to solve the problem, plaintiff and the contractor agreed that all windows on the building should be caulked. Subsequently this was done by the subcontractor who had furnished them.

In November 1969 defendant wrote plaintiff as follows:

"It appears that a final inspection is due. The only serious problem with the building still is with the windows, and I feel that the manufacturer should have an inspection made to determine if installation is according to specs.

"In view of the contractor requesting settlement, I hope that a final inspection can be made at the earliest possible date. May I hear from you within the next few days."

After receiving this letter plaintiff made a final inspection. He testified he "thought the windows were caulked and were holding." He said he looked at them and they did not appear to be leaking. However, he did not test them.

Plaintiff notified defendant that the construction work passed final inspection. In reliance on this notification, defendant paid the contractor the remaining balance on the general contract.

In about January 1970 defendant discovered that the windows still leaked. When one of the windows was tested from the outside with a water hose, observers on the inside had to jump back to keep from getting wet. Leakage occurred through the window channels and frame. Subsequently defendant installed storm windows in about 90 percent of the north, east, and west windows of the building, at a cost of $8879.23. Tenants were reimbursed $388.65 for damage to furnishings, and some rent was lost.

In June 1970, when plaintiff submitted his bill for final payment of $6825, defendant refused to pay, and the present action was brought. The case was tried at law to the court. The trial court entered judgment dismissing plaintiff's petition, and this appeal followed.

I. *Plaintiff's duty.* Plaintiff contends the trial court found he breached a duty he did not have. This contention rests in part on an assumption that the trial court's holding made him, rather than the contractor, responsible for the defect in the windows. However, this assumption is incorrect. The trial court did not determine what caused the defect or who was responsible for it. Plaintiff was denied recovery of the balance of his fee on a ground entirely independent of that issue. The court found plaintiff should not have approved the work on the building without a water-test on the windows to see if the leakage problem had been corrected by caulking. The court also found that if plaintiff had water-tested the windows the leakage would have been discovered, plaintiff would not have approved the work, and, as a result, defendant would have held back construction funds to protect itself against the loss subsequently incurred. It was on this basis that the trial court held plaintiff failed to prove performance of his obligations under the contract.

Plaintiff's contention also rests on an assertion that approval of final payment could not have breached any duty imposed on him by the contract.

■■■ This assertion presents an issue requiring construction of the contract. Construction of a contract is a determination of its legal effect, a matter of law to be decided by the court. *Connie's Construction Co., Inc. v. Fireman's Fund Insurance Co.,* 227 N.W.2d 207, 210 (Iowa 1975). Moreover, the issue of existence of a legal duty is also a matter of law. *Porter v. Iowa Power and Light Company,* 217 N.W.2d 221, 228 (Iowa 1974).

This contract imposed two principal duties on plaintiff. One was to prepare plans and specifications. The other was to see that the plans and specifications were carried out by the contractor to achieve the

result planned for. The latter duty is at issue here.

Plaintiff acknowledges that his approval of the work was tantamount to issuance of a certificate that the work was complete. Under its financing agreement, defendant was not authorized to make final payment to the contractor without plaintiff's approval of the work. In imposing a duty to supervise the work on the architect, the contract required plaintiff to "endeavor to guard the owner against defects and deficiencies in the work of contractors  *  *."

When one employs an architect to draw plans and to supervise construction, and no money is to be paid out without the certificate of the architect, the architect is the agent of the one who employs him, and he is bound to exercise reasonable care to see that the work is done in proper manner with proper materials. Among other ways, this duty is breached when the architect negligently certifies completion of defective or incomplete work. *Avent v. Proffitt,* 109 S.C. 48, 95 S.E. 134 (1918); see *Skidmore, Owings & Merrill v. Connecticut G. L. Ins. Co.,* 25 Conn.Sup. 76, 197 A.2d 83 (1963); *Bump v. McGrannahan,* 61 Ind.App. 136, 111 N.E. 640 (1916); *Newton Investment Co. v. Barnard and Burke, Inc.,* 220 So.2d 822 (Miss.1969); *Westerhold v. Carroll,* 419 S.W.2d 73 (Mo.1967); *Willner v. Woodward,* 201 Va. 104, 109 S.E.2d 132 (1959); *School Dist. No. 172 v. Josenhans,* 88 Wash. 624, 153 P. 326 (1915); Annot., 43 A.L.R.2d 1227, 1229–1233.

This obligation does not make the architect a guarantor of the contractor's work. Instead, it requires the architect to exercise reasonable care in supervision and inspection of the work to protect the owner against payment of money to the contractor for work not performed or materials not delivered. *Pancoast v. Russell,* 148 Cal. App.2d 909, 913, 307 P.2d 719, 722–723 (1957); *Westerhold v. Carroll,* supra; cf. *Trunk & Gordon v. Clark,* 163 Iowa 620, 145 N.W. 277 (1914).

Therefore, plaintiff did have a contractual duty in the present case to exercise

reasonable care to determine whether the contractor's work was properly done before approving final payment. The trial court did not err in so construing the contract.

II. *Sufficiency of evidence.* Plaintiff contends the evidence is insufficient to support the trial court's finding that he failed to prove performance of his duty. One who seeks recovery on a contract has the burden to plead and prove the contract and his performance. *Heaberlin v. Heaberlin,* 255 Iowa 403, 406–407, 122 N.W.2d 841, 843 (1963). When the trial court in a law action tried to the court denies recovery because of a party's failure to carry his burden on an issue, we will not interfere on appeal unless we find the party carried his burden as a matter of law. The evidence in the party's favor must be so overwhelming that only one reasonable inference could be drawn. On review we examine the evidence in the light most favorable to the judgment. *Harper v. Cedar Rapids Television Co., Inc.,* 244 N.W.2d 782, 787 (Iowa 1976).

With these principles in mind we have examined the evidence in this case. Having done so, we are unable to say that plaintiff carried his burden to prove performance of the contract as a matter of law.

Although, as plaintiff argues, defendant had actual knowledge of the problem with the windows at the time plaintiff was asked to make final inspection of the work, the trial court was fully justified by the evidence in finding defendant relied on plaintiff to determine, as part of the final inspection, whether the problem had been solved by caulking. See *Pancoast v. Russell,* supra. The trial court was not compelled as a matter of law to make a contrary finding.

Nor does the doctrine of substantial performance, urged by plaintiff, affect the result here. See *Huffman v. Hill,* 245 Iowa 935, 65 N.W.2d 205 (1954); *Stratmeyer v. Hoyt,* 189 Iowa 85, 174 N.W. 243 (1919). The doctrine has no application where the party relying on it is guilty of an uncured material breach of the contract. Restatement (Second) of Contracts, § 262

(Tent. Draft No. 8, 1973) ("Except as stated in § 265 [not applicable here], it is a condition of each party's remaining duties to render performance to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."). The non-performance involved here was material.

The trial court was not compelled as a matter of law to find plaintiff performed his obligations under the contract.

AFFIRMED.