In the Matter of the ESTATE OF Robert E. VOTTELER, Deceased.

Ramona HELTSLEY, Appellant,

v.

Helen VOTTELER, Administrator of the Estate of Robert E. Votteler, Appellee.

No. 66985.

Supreme Court of Iowa.

Dec. 22, 1982.

Paul Moser, Jr., Des -Moines, for appellant.

William D. Scherle of Hansen, McClintock & Riley, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, LARSON, and SCHULTZ, JJ.

McCORMICK, Justice.

The determinative question in this appeal is whether a genuine issue of material fact exists that would bring this case within the rule in *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 551 P.2d 334, 131 Cal.Rptr. 14 (1976). We do not decide in this case whether the *Tarasoff* rule will be adopted in Iowa. Instead we hold that summary judgment for defendant was appropriate in this case even if the rule were applicable. We affirm the trial court.

In *Tarasoff* the California Supreme Court held that when a psychotherapist determines,

> or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary in the circumstances.

*Id.* at 431, 551 P.2d at 340, 131 Cal.Rptr. at 20.

In the present case, the record shows that Lola Hansen was a patient of Robert E. Votteler, a Marshalltown psychiatrist. On September 5, 1976, at a time when Lola was still Dr. Votteler's patient, she assaulted and seriously injured plaintiff Ramona Heltsley by driving an automobile over her in a Marshalltown park. Dr. Votteler subsequently died, and plaintiff brought this action as a claim against his estate, administered by defendant Helen Votteler.

Pursuant to pretrial order, plaintiff filed a "Statement of Claim" in which she alleged that Dr. Votteler knew or should have known that Lola had a mental illness that made her dangerous to others. Plaintiff specifically alleged that Dr. Votteler was negligent in failing to interview Lola's husband Donald to determine her violent propensities and in failing to warn Donald of the danger so he could have protected plaintiff. No attempt was made to enlarge or alter these specifications in the summary judgment proceeding. Thus they are the only alleged breaches of duty that are relevant to the action for purposes of our review. *See Kester v. Bruns,* 326 N.W.2d 279, 282 (Iowa 1982).

In her motion for summary judgment defendant alleged no genuine issue of mate-

rial fact existed upon which plaintiff might recover at trial. The motion was supported by deposition testimony of plaintiff and Donald Hansen. Plaintiff's resistance was based on the same depositions as well as an affidavit by plaintiff. Although plaintiff alleged that Dr. Votteler testified in a criminal case involving Lola about his care and treatment of her, this testimony was not offered in the summary judgment proceeding. The evidentiary record is thus limited to the deposition testimony and plaintiff's affidavit. *See* Iowa R.Civ.P. 237(e) and (h). We do note, however, that the result we reach is not affected by plaintiff's answers to interrogatories mentioned in the trial court ruling but not shown to have been made part of the summary judgment record.

It is undisputed that Lola Hansen suffered from serious mental illness. The illness was manifested by agitated, compulsive and aggressive behavior over a period of more than two years. She threatened people who bid against her at used furniture auctions and purchased large quantities of furniture that she and Donald did not need and could not afford. She and plaintiff became friends through their association at auctions.

In order to keep Donald from going out at night, Lola occasionally threatened him with a two by four, and hid or burned his clothing. She threatened to kill herself and subsequently attempted suicide. Once she burned Donald with a cigarette and another time beat him with an iron pipe. When he obtained medical treatment for his beating injuries, the physician advised him to stay away from Lola because she was "crazy." Lola threatened to kill Donald and plaintiff more than once. The last threat was made the night before the assault with the car in the park, when she caught up with them after a car chase. Prior to that event, she had tried to run Donald down with her car on one occasion and to run down both Donald and plaintiff on two other occasions.

Lola was hospitalized twice for treatment of her mental illness. Each time she was cared for by Dr. Votteler. The doctor asked Donald about Lola's background, but Donald testified he did not tell the doctor about Lola's violence because he wasn't specifically asked about her behavior. The second hospitalization occurred in early 1976. Although it ended up being voluntary, the commitment was initiated by plaintiff and Lola's sister because Donald was afraid to attempt it. This was one of the times Lola told plaintiff she would kill her.

Donald did not begin to see plaintiff socially until after he left Lola in July 1976. Many of the incidents, including the two attempts to run them down, the car chase, and the assault with the pipe, happened between that time and the September event on which this case is based. In view of the car chase incident and subsequent threats, Donald was afraid to leave plaintiff's home and was reluctant to go to the park the next day.

In contending Dr. Votteler should have warned Donald that Lola was dangerous, plaintiff insists that neither her knowledge of Lola's violent nature nor the threats alarmed her. She contends she would have taken the situation seriously only if a warning originated with a professional like Dr. Votteler.

We do not believe the *Tarasoff* rule should be stretched to support finding a cause of action against the psychotherapist in these circumstances. Plaintiff's theory of action assumes Dr. Votteler lacked actual knowledge of Lola's violent propensities. She alleges he had a duty to ask appropriate questions of Donald to elicit that information. Then, according to her theory, Dr. Votteler should have warned Donald of Lola's dangerousness and Donald in turn should have warned her. She acknowledges that a warning from Donald alone or from persons other than Dr. Votteler would have done no good. She also acknowledges she knew of Lola's threats and much about her aggressive behavior, including the two prior attempts to run her and Donald down with an automobile and the assault on Donald with the pipe.

Under these facts, plaintiff's theory attenuates the *Tarasoff* rule beyond the breaking point. Even if we were to adopt that rule, we could not allow recovery in a case like this. Nor has any other jurisdiction done so.

In *Tarasoff* the trial court had sustained a demurrer to a complaint alleging that the patient had confided his intention to kill the victim to his psychotherapist, that the therapist believed he would carry out the threat, and that neither the therapist nor the superior with whom the therapist consulted warned the victim or informed anyone who might warn the victim. No basis existed for believing the victim had any knowledge of the danger. *See* 17 Cal.3d at 430–40, 551 P.2d at 339–45, 131 Cal.Rptr. at 19–25.

In *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500 (1979), a psychiatrist was denied summary judgment on a record containing expert testimony that accepted medical practice required a warning when the psychiatrist knew the patient fired a weapon at the victim's car, showed the psychiatrist a knife, and verbalized threats to the victim and her boyfriend. There was no evidence from which it could be inferred the victim or others who might warn her knew of the danger.

In contrast to *Tarasoff* and *McIntosh,* the present record lacks any basis for finding the therapist knew of the danger or should be charged with such knowledge in accordance with standards of his profession. Moreover, the evidence has sufficient force to charge the victim with knowledge of the danger as a matter of law.

Other cases have involved the issue of failure to control rather than an issue of failure to warn. For example, in *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. 185 (D.Neb.1980), the United States was accused of negligence for alleged failure of a Veteran's Administration hospital to provide proper care and treatment to a dangerous patient or to detain him or initiate civil commitment proceedings against him. The patient withdrew from psychiatric day care treatment, purchased a shotgun and fired it into a crowded dining room of an Omaha night club, killing one patron and wounding another. Following *Tarasoff* and *McIntosh,* and anticipating the view of the Nebraska Supreme Court, the federal court held that the complaint was not vulnerable to a motion to dismiss. A similar conclusion was reached by the Ohio court in a "negligent release" case, *Leverett v. State,* 61 Ohio App.2d 35, 399 N.E.2d 106 (1978). In a third case, the Georgia Supreme Court, in *Bradley Center, Inc. v. Wessner,* 296 S.E.2d 693 (Ga.1982), affirmed a judgment for a plaintiff where liability was predicated on failure to control a dangerous patient. The record contained substantial evidence that a mental hospital gave an unrestricted weekend pass to a patient with knowledge he would likely cause injury to his wife if he had an opportunity. The patient obtained a gun and killed his wife and another person with it. No issue of failure to control is involved in the present case.

California has limited the duty to warn in *Tarasoff* to known and specifically foreseeable and identifiable victims. *See Thompson v. County of Alameda,* 27 Cal.3d 741, 614 P.2d 728, 167 Cal.Rptr. 70 (1980). This limitation has been adopted by other courts. *See Hasenei v. United States,* 541 F.Supp. 999 (D.Md.1982); *Leedy v. Hartnett,* 510 F.Supp. 1125 (M.D.Pa.1981); *Cairl v. State,* 323 N.W.2d 20 (Minn.1982). We have no occasion to determine whether that limitation would apply here. It demonstrates, however, that the *Tarasoff* duty is not open-ended. It also supports a conclusion that the duty should not be imposed when the foreseeable victim knows of the danger.

We hold that the present record is insufficient to demonstrate a genuine issue of material fact on the allegations of negligence and proximate cause. The trial court was correct in entering summary judgment for defendant.

AFFIRMED.