**Rex ANTHONY and Pamela Anthony, Appellants,**

v.

**STATE of Iowa, Appellee.**

**No. 84–1176.**

Supreme Court of Iowa.

Sept. 18, 1985.

Raymond Gazzo and Carol Coppola of Coppola, Trout, Taha and Gazzo, Des Moines, and Philip Miller, Amy Christensen Couch and Margaret La Marche, Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., Shirley Steffe and Patrick Hopkins, Asst. Attys. Gen., for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, LARSON, CARTER, and WOLLE, JJ.

McCORMICK, Justice.

The trial court ruled for the State in this tort action based on the rape of plaintiff Pamela Anthony by a state prisoner on work release. Plaintiffs contend that the court erred in an evidentiary ruling and in its holding that the State did not negligently breach several duties to them. Because we find no reversible error, we affirm the trial court.

The questions are whether the court erred in excluding an exhibit showing changes in work-release policies, in holding that the State exercised ordinary care in devising the prisoner's work-release plan, in finding that the State was not negligent in exercising control and supervision of the prisoner, and in ruling that the State had no duty to warn them of the prisoner's history of sex crimes.

■ As a preliminary issue we must address plaintiffs' motion for partial adjudication and motion to strike portions of the State's brief. The motion was ordered submitted with the appeal. The State asserts in its brief several legal defenses to plaintiffs' action that were rejected by the trial court. It urges those defenses as alternative grounds for affirmance. Plaintiffs contend the State cannot do this because it did not cross-appeal. The rule, however, is that a party may seek affirmance on appeal by relying without a cross-appeal on grounds rejected by the trial court as well as grounds that were accepted. *See Hamilton v. City of Urbandale*, 291 N.W.2d 15, 17 (Iowa 1980). The failure to cross-appeal merely precludes the party from obtaining a more favorable judgment. *See Prestype, Inc. v. Carr*, 248 N.W.2d 111, 121 (Iowa 1976). Plaintiffs assert this rule is limited to appeals from summary judgment, judgments of dismissal or judgments on directed verdicts, but no such limitation exists. We overrule plaintiffs' motion for partial judgment and to strike.

■ One other preliminary matter requires attention. In their appellate brief plaintiffs attack several trial court findings of fact on the ground they are not supported by substantial evidence. Those findings concerned issues on which plaintiffs had the burden of proof. The review is not for substantial. evidence:

When the trial court in a law action tried to the court denies recovery because of a party's failure to carry his burden on an issue, we will not interfere on appeal unless we find the party carried his burden as a matter of law. The evidence in the party's favor must be so overwhelm-

ing that only one reasonable inference could be drawn. On review we examine the evidence in the light most favorable to the judgment.

*Roland A. Wilson v. Forty-O-Four Grand Corp.*, 246 N.W.2d 922, 925 (Iowa 1976).

Little dispute exists concerning the relevant events in the present case. The controversy concerns the inferences to be drawn from the evidence and their legal effect.

Robert Sirovy was sent to the reformatory at Anamosa in 1979 to serve concurrent indeterminate five-year sentences for terrorism and escape. The terrorism conviction arose from an incident in which he ordered a female co-worker to disrobe at knifepoint while she was giving him a ride home. In 1977 he had been convicted and sentenced to one year in the county jail for assault with intent to inflict great bodily injury based on the alleged rape of his brother's girlfriend. While at the medical security facility at Oakdale during his prison sentence, he reportedly threatened another prisoner with homosexual assault.

He was scheduled for discharge from prison upon completion of his sentences on November 26, 1981. He had been denied parole. In April 1981 he applied for work release which was granted by an institutional work-release committee on May 20, 1981.

Sirovy arrived at the Des Moines work release center on July 9, 1981. He underwent a brief orientation and signed a work-release plan. The work-release plan was a six-page mimeographed form prepared by state officials setting forth work release conditions and rules. The plan contained a blank for "special conditions" but none were imposed on Sirovy. The counselor prepared an "action plan" for Sirovy but it was not ready until after the material events in this case and would not appear to have affected them.

As one condition of work release, Sirovy was obliged to find a job. He obtained a job with Hawkeye Roofing Company on July 10, 1981. The record does not show that either he or the work-release officials

told the employer he was on work release or anything about his criminal record. He started work on July 13.

On July 16, he was assigned to work with a roofing crew repairing a storm-damaged roof on the home of plaintiffs Pamela and Rex Anthony. In the morning of July 20, while Pamela was alone in the home with her two small children, Sirovy sought and received her permission to use the bathroom. A few minutes later he returned to the door with a request to use the telephone to call the foreman. Sirovy had been left alone at the job site. When he entered the home this time, Sirovy picked up a kitchen knife. He found Pamela in her daughter's room, ordered her at knifepoint to remove her clothes, and raped her. He threatened to kill her and her family if she reported the incident.

Pamela subsequently did report it, and Sirovy was charged and convicted of second-degree sexual abuse. Plaintiffs later brought the present tort claim against the State. They alleged the State was negligent in preparing the work-release plan, in controlling and supervising Sirovy, and in failing to warn them about Sirovy's background. The case was tried to the court, and the trial court subsequently filed an extensive decision rejecting the claim and entering judgment for the State. This appeal followed. No issue is presented regarding damages.

I. *The evidentiary ruling.* Plaintiffs offered an excerpt from the state's current work-release manual into evidence. This portion of the work-release manual was not in effect at the time of the 1981 events. The 1981 manual was separately offered and received as a State exhibit. The excerpt offered by plaintiffs contained written statements of state policy concerning restrictive conditions on employment placement. The State objected to the exhibit on relevancy and materiality grounds. The trial court reserved ruling, and in its final ruling excluded the exhibit "with the exception of so much of same as is consistent with the previously mentioned testimony of

[the counselor] pertaining to unwritten employment policies."

In contending the court erred in its ruling, plaintiffs rely on Iowa Rule of Evidence 407 which provides for an exception to the general rule excluding evidence of subsequent remedial measures to prove negligence. The exception permits admission when the evidence is offered for the purpose of proving "feasibility of precautionary measures." Plaintiffs assert the exhibit was admissible to show the State's control of work releasees and the feasibility of precautionary measures relating to the releasees' choice of employment. The State suggests several grounds for upholding the trial court ruling, but we find it necessary to consider only one ground.

 A sufficient reason for upholding the ruling is the failure of plaintiffs to alert the court at trial to their present theory of admissibility. When evidence that is apparently inadmissible is offered for a limited purpose, the proponent of the evidence has the burden to identify the limited purpose before the trial court rules. *See Lemke v. Mueller*, 166 N.W.2d 860, 870–71 (Iowa 1969). The present situation comes within this rule.

We therefore find no reversible error in the trial court's ruling excluding part of the proffered exhibit.

II. *The work-release plan.* The trial court found that the State exercised due care in formulating a work-release plan for Sirovy. Plaintiffs contend the evidence does not support this finding. Their contention more correctly should be that the evidence was so strong the court was compelled as a matter of law to make a contrary finding. We believe, however, that the result must be upheld in any event.

Both in the trial court and this court, the State urged the discretionary function exception to tort liability under section 25A.14(1). That provision bars negligence claims against the state "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused."

State officials exercise discretion at two stages in work-release cases. First they decide whether the person will be placed on work release. Next, if the person is to be released, they are required to decide the terms of a work-release plan:

> If the recommendation is approved, the committee shall adopt a work release plan for the applicant which shall contain such terms and conditions as may be necessary and proper.

Iowa Code § 247A.4. The parties agree and the court held that the discretionary function exception applies to the first decision. The State disagrees with plaintiffs' assertion and the court's holding that the exception does not immunize the second decision. We hold that the second decision also comes within the discretionary function exception.

 Plaintiffs confuse the duty to adopt a plan with discretion to determine its terms. The committee complied with the statutory mandate to adopt a plan. No dispute exists about that. The controversy concerns whether the plan contained all the terms that were necessary and proper. Plaintiffs argue that the plan should have contained special conditions relating to the particular threat of sexual violence posed by Sirovy.

In providing that the work-release plan shall contain "such terms and conditions as may be necessary and proper," the General Assembly has expressly vested state officials with discretion to determine the terms and conditions of work release. The only question is whether this is the kind of discretionary function upon which exemption from liability can be claimed. In a number of cases we have said the applicability of the exception depends on whether the particular decision was made at the planning level or the operational level. If it was made at the planning level, the decision is within the exception. If the decision was made at the operational level, the ex-

ception does not apply. *See, e.g., Stanley v. State,* 197 N.W.2d 599, 603 (Iowa 1972).

In *Butler v. State,* 336 N.W.2d 416, 419 (Iowa 1983), we noted that the planning level is generally characterized as the policymaking stage and encompasses decisions that call for a weighing of competing interests, that require an assessment of the practicality, including budgetary constraints, of a proposed course of action, or that involve an evaluation of how the public interest will be best served. We said:

> The implementation of decisions made at the planning level is operational. . . .
>
> The distinction between the two levels is best illustrated in terms of judicial review. Policy decisions, such as when and where to construct a freeway, involve the weighing of the merits of social, political and economic factors traditionally held to be within the purview of the legislature. Judicial review of such decisions would be an apparent violation of the separation of powers principle. . . . Decisions made at the operational level, however, do not involve the same overriding policy determinations and can readily be reviewed under judicially manageable tort standards of due care and reasonableness.

*Id.* at 419–20. Viewed in this light, we believe the determination of the terms of a work-release plan, as distinguished from steps taken to implement it, is a protected discretionary function.

The legislature has created the work-release program and has given the executive branch, not the judiciary, the prerogative to determine the conditions of a work-release plan. Fundamental issues of social and economic policy are involved. Hard choices must be made among alternatives that are all less than satisfactory. *See* Prosser and Keeton, *The Law of Torts* § 131 at 1047 (5th ed. 1984) ("Thus a program in which prisoners are . . . placed on work-release, or paroled, is obviously a program fraught with danger to innocent citizens, but it is not necessarily negligent to adopt such a program. . . ."). Determining terms and conditions of work release obviously in-

volves the weighing of interests beyond the "judicially manageable tort standards of due care and reasonableness." Considered in the light of tort standards alone, due care might require keeping a person like Sirovy under constant surveillance. Every woman in the community was at risk when he was at large. Yet the legislature obviously has a correctional philosophy of attempting to integrate convicted persons into the community at some risk to the public. Executive branch officials have been vested with discretion to make the decisions affecting the degree of that risk. Devising necessary and proper terms and conditions of a work-release plan thus is a discretionary executive branch function within the immunity from tort liability provided in section 25A.14(1).

A similar conclusion was reached in *Epting v. State,* 546 P.2d 242 (Utah 1976). In analogous circumstances, the decisions whether to parole a prisoner and determining the terms and conditions of parole have been held to be discretionary functions under the federal tort claims statute. *See Payton v. United States,* 679 F.2d 475, 481 (5th Cir.1982).

We find no reversible error in the trial court's refusal to hold the State liable for negligence in establishing the terms and conditions of work release.

III. *Supervision and control.* Plaintiffs separately contend the trial court erred in refusing to find a breach of due care by the State in supervising and controlling Sirovy. Among other grounds the State again urges the applicability of the discretionary function exception. We believe the trial court's holding can be sustained for two reasons.

First, the measure of control and supervision of Sirovy was determined in the work-release plan. The State could be liable in negligence for failing to exercise due care in implementing that plan but not for breach of any duty that inheres in the decisions involved in formulating the plan. *See Payton,* 679 F.2d at 482 ("The plaintiff must therefore allege that the Board breached a duty sufficiently separable

from the decision-making function to be nondiscretionary and outside of the exception."). The gist of plaintiffs' allegation concerning negligent supervision and control is the failure of the State to structure Sirovy's work-release plan to accommodate and take precautions against the unique threat that he posed. This is a complaint about the terms and conditions in the plan and not about its implementation. To that extent the discretionary function exception applies, and the State is immune from liability.

■ Secondly, assuming the evidence might support a finding that the State was negligent in implementing the work-release plan, the evidence was not so strong as to compel a finding of negligence as a matter of law. We find no merit in plaintiffs' contrary contention.

■ IV. *Duty to warn.* Plaintiffs contend the trial court erred in holding that the State did not have a duty to warn them of Sirovy's background so they could protect themselves against him. The existence of duty is a question of law. *See Porter v. Iowa Power and Light Company,* 217 N.W.2d 221, 228 (Iowa 1974). The general rule at common law is that a person has no duty to prevent a third person from causing harm to another. Exceptions have been recognized in a number of situations. The one involved here is stated in *Restatement (Second) of Torts* section 315 (1965):

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, ....

The same exception was invoked in *Matter of Estate of Votteler,* 327 N.W.2d 759 (Iowa 1982). As in *Votteler,* we need not and do not decide in this case whether to recognize the exception or whether it would apply in the present facts. Such far-reaching and sensitive issues will be better decided in a case in which they are dispositive.

Moreover, the State does not urge the discretionary function defense to the allegation of breach of duty to warn. Therefore we have no occasion to consider whether that defense applies. We address only the scope of a duty to warn when an actor in the State's position has a duty to control the conduct of a third person to prevent that third person from causing physical harm to another. In *Votteler,* we found no duty to warn existed because the victim knew of the danger. *See* 327 N.W.2d at 762. No such knowledge is asserted in the present case. Rather, the State argues no duty to warn plaintiffs existed because no evidence was adduced to show that Sirovy had threatened to harm them.

No doubt exists that a duty to warn may arise in some circumstances under the *Restatement* standard. In the context of a psychotherapist's duty, the California Supreme Court stated that when a psychotherapist determines,

or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending on the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary in the circumstances.

*Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 431, 551 P.2d 334, 340, 131 Cal.Rptr. 14, 20 (1976). The court found that a cause of action had been stated on a claim of negligence in the therapist's failure to warn the plaintiffs' daughter of the danger posed to her by one of the therapist's patients. Plaintiffs alleged that two months before the patient killed their daughter he had told the therapist he

intended to kill a young woman whom the therapist could have readily identified as their daughter.

In a subsequent case, the California court defined the scope of the duty to warn of the danger posed by a dangerous juvenile offender released by the county to his mother. The court held that in such a context "the duty to warn depends upon and arises from the existence of a prior threat to a specific identifiable victim." *Thompson v. County of Alameda*, 27 Cal.3d 741, 759, 614 P.2d 728, 738, 167 Cal.Rptr. 70, 80 (1980). The plaintiffs in the case were parents of a five-year-old boy who lived a few doors away from the residence of the offender's mother. After his release, the offender sexually assaulted and killed the boy. The complaint alleged knowledge by the county that the offender had latent, extremely dangerous and violent propensities toward young children, that violent sexual assaults on young children would likely occur if he were released, and that the offender had stated he would, if released, take the life of a young child in the neighborhood. Assuming the allegations were true, the court refused to recognize a duty of the county to warn the plaintiffs, the parents of other neighborhood children, the police, or even the offender's mother, of the danger.

The court based its holding on considerations of legislative policy and foreseeability. Policy considerations included the risk to which each member of the public is necessarily exposed through parole and probation release. Statistics show that a significant number of released persons commit new violations, but the legislature nevertheless has made probation and parole an integral part of its rehabilitation effort. *Id.* at 754, 614 P.2d at 734–35, 167 Cal.Rptr. at 76–77. The court also believed imposition of a duty to warn in this context would be unwieldy and of little practical value. The requisite volume of generalized warnings concerning probationary release of offenders would dilute their effect, do little to increase safety measures, would stigmatize released offenders, and would

be difficult to give. *Id.* at 755–56, 614 P.2d at 735–36, 167 Cal.Rptr. at 77–78.

Warning the police without requiring the police to act on the warning would be ineffective according to the court. Police resources would be disproportionately diverted if action on such warnings generally were required. Warning to parents of neighborhood children was viewed as similarly impracticable. The court was concerned about the strain on resources and an inhibiting effect on rehabilitative efforts. The court also said no duty existed to warn the offender's mother when she had no duty to act, when the identity of any potential victim was not known, and when the decision to release the offender to the mother's custody was itself immunized. *Id.* at 758–59, 614 P.2d at 737–38, 167 Cal. Rptr. at 79–80.

The *Thompson* holding has been followed by other courts. *See Leedy v. Hartnett*, 510 F.Supp. 1125 (M.D.Pa.1981); *Cairl v. State*, 323 N.W.2d 20 (Minn.1982). Cases relied on by plaintiffs are distinguishable. In *Merchants National Bank and Trust v. United States*, 272 F.Supp. 409 (D.N.D.1967), the mental patient involved had made a specific threat to kill the victim, who was his wife. *Lipari v. Sears, Roebuck & Co.*, 497 F.Supp. 185 (D.Neb. 1980), *Hasenei v. United States*, 541 F.Supp. 999 (D.Md.1982), and *Petersen v. State*, 100 Wash.2d 421, 671 P.2d 230 (1983), involved the general duty to protect the public against foreseeable harm, not the specific duty to warn potential victims who have not been threatened or who cannot readily be identified. Under *Thompson*, the steps to be taken to protect potential victims do not include a duty to warn persons who have not been threatened or who are not readily identifiable.

■■■■■ We believe the existence of a duty to warn should be determined under the *Thompson* standard. In the present case, no threats had been made. Hence no potential victim could be readily identified for warning. In these circumstances, the State did not have the duty to warn asserted by plaintiffs.

We find no reversible error.

AFFIRMED.