James F. BEBENSEE and Penelope A. Bebensee, Plaintiffs-Appellants,

v.

J.E. IVES and Dale G. Wulf, Defendants-Appellees.

No. 86–270.

Court of Appeals of Iowa.

May 28, 1987.

Max E. Kirk and William C. Ball of Ball, Kirk, Holm & Nardini, Waterloo, for plaintiffs-appellants.

Dana M. Craig, Robert V.P. Waterman, and Carole J. Anderson of Lane & Waterman, Davenport, for defendants-appellees.

Heard by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

The plaintiffs have appealed a judgment for defendant doctors in a medical malpractice suit. We affirm.

On August 5, 1980, James Bebensee consulted Dr. Dale Wulf complaining of back pain. Bebensee received pain medication and was directed to rest his back. Because the pain continued, Bebensee was referred to an orthopedic surgeon, Dr. J.E. Ives. On August 19th Bebensee was admitted to Jane Lamb Hospital where he underwent testing. A lumbar myelogram test confirmed a herniated disc. On September 25, 1980, Dr. Ives and Dr. Wulf performed a laminectomy on Bebensee for removal of the herniated disc. Following surgery, Bebensee was observed to be suffering from certain neurological deficits, including numbness and walking difficulties.

Bebensee was then referred to Dr. M.A. Sanguino, a neurologist, who diagnosed Bebensee's condition as a cauda equina syndrome which describes the condition of having certain neurological deficits. Bebensee was hospitalized at Rock Island Franciscan Hospital from December 11 through December 24, 1980. A CT scan revealed that Bebensee had spinal stenosis, which is a narrowing or constriction of a space within the spinal column. At the time of trial Bebensee continued to suffer from certain neurological deficits.

On July 6, 1982, plaintiffs commenced their medical malpractice action against defendants Ives, Wulf, and Jane Lamb Memorial Hospital. Subsequently, plaintiffs dismissed Jane Lamb Memorial Hospital from the cause. The plaintiffs maintained at trial that the defendants were negligent in rendering surgical care to Bebensee. On August 15, 1985, the trial court entered judgment in favor of the defendants. On January 17, 1986, the trial court denied plaintiffs' motions for enlargement or amendment of the court's findings and conclusions pursuant to Iowa Rule of Civil Procedure 179(b) and for a new trial pursuant to Iowa Rule of Civil Procedure 244. On appeal, plaintiffs contend the district court's factual findings are not supported by the evidence, that the district court erroneously held them to a higher standard of proof than required by law, and that the district court judge demonstrated prejudice against them during the trial.

## I.

In our review of this law action, the trial court's findings of fact have the effect of a special verdict. *Whiteaker v. State*, 382 N.W.2d 112, 114 (Iowa 1986). We review the evidence in the light most favorable to the judgment; when there is doubt or am-

biguity in the trial court's findings, they will be construed to uphold the judgment. *Id.*

■ Additionally, we adhere to the rule that when the trial court in a law action tried to the court denies recovery because of a party's failure to carry his burden on an issue, we will not interfere on appeal unless we find the party carried his burden as a matter of law. *Liberty Mutual Insurance Co. v. Winter,* 385 N.W.2d 529, 532 (Iowa 1986).

Appellants claim that Iowa Rule of Appellate Procedure 14(f)(1) is applicable here. This rule states that findings of fact in a law action, which means generally any action triable by ordinary proceedings, are binding upon the appellate court if supported by substantial evidence. Appellants claim there was not substantial evidence for a finding that negligence was not proven by the trial court. Appellees assert that the standard of review is not for substantial evidence in the record, but rather that the appellate court may not interfere unless it finds the party carried its burden as a matter of law. Our case law firmly supports the latter as our standard for reviewing the instant case.

■ As recognized in *Ruble v. Carr,* 244 Iowa 990, 993, 59 N.W.2d 228, 230 (1953), the plaintiff assumes a heavy burden on appeal in attempting to sustain the contention he was entitled to recover as a matter of law. His burden is much greater than if a jury had been directed to find against him on the ground the evidence was insufficient and the plaintiffs were here contending that the evidence would support a recovery. *Id.* The appellate court's function on appeal, in these circumstances, is not to determine whether the evidence was such as to permit recovery but whether it was so conclusive as to *compel* recovery. *Id.;* 5A C.J.S. *Appeal and Error* § 1656(9) at 521 (1958). If the fact findings of the lower court are undisputed or no conflicting inferences may be drawn from the facts, we could then find that the party who had the burden of proof carried such burden as a matter of law. *Frantz v. Knights of Columbus,* 205

N.W.2d 705, 708 (Iowa 1973). In *Roland A. Wilson v. Forty–O–Four Grand Corp.,* 246 N.W.2d 922 (Iowa 1976), the plaintiff contended that the evidence was insufficient to support the trial court's finding that he failed to prove performance of his duty. The supreme court reemphasized that when the trial court in a law action denies recovery because of a party's failure to carry his burden on an issue, no interference on appeal will occur absent overwhelming evidence in the party's favor that only one reasonable inference could be drawn. *Id.* at 925. In *Anthony v. State,* 374 N.W.2d 662 (Iowa 1985), plaintiffs contended that the trial court erred in holding the State did not negligently breach several duties to them. In upholding the trial court's conclusion that the State was not negligent, the supreme court said, "The review is not for substantial evidence." *Id.* at 664. The court went on to observe:

> The trial court found that the State exercised due care in formulating a work release plan for Sirovy. Plaintiffs contend the evidence does not support this finding. Their contention more correctly should be that the evidence was so strong the court was compelled as a matter of law to make a contrary finding.

Evidence available to an appellate court does not often have that necessary overwhelming quality. *See, e.g., Liberty Mutual Insurance Co. v. Winter,* 385 N.W.2d at 532; *Whiteaker v. State,* 382 N.W.2d at 114; *Heidemann v. Sweitzer,* 375 N.W.2d 665, 670 (Iowa 1985); *Anthony v. State,* 374 N.W.2d at 666; *Harper v. Cedar Rapids Television Co., Inc.,* 244 N.W.2d 782, 788 (Iowa 1976); *Arthur Elevator Co. v. Grove,* 236 N.W.2d 383, 388 (Iowa 1975).

## II.

Given this limited scope of review, we cannot find as a matter of law that plaintiffs met their burden of showing that the injuries incurred were due to defendants' malpractice.

■ A plaintiff has the burden of proof to show by a preponderance of the evidence that defendant's negligence was the proximate cause of the plaintiff's inju-

ries. *Sponsler v. Clarke Electric Cooperative,* 329 N.W.2d 663, 665 (Iowa 1983). Specific negligence of a physician can be established through expert testimony establishing the standard of care and its breach. *Forsmark v. State,* 349 N.W.2d 763, 768 (Iowa 1984).

Dr. Ives testified that he did not stretch or compress the nerve roots during surgery and did not deviate from the appropriate standard of care. Dr. Whitmore testified that the swelling incident to the normal pressure occurring during this type of surgery could have been responsible for Bebensee's cauda equina syndrome. Dr. Whitmore further testified that the CT scan was not in such widespread use in 1980 so as to enable Dr. Ives to detect the condition called spinal stenosis. He concluded that Dr. Ives could not have recognized the spinal stenosis and that the medical appreciation of spinal stenosis had developed in tandem with the CT scan since 1980.

Plaintiffs' witnesses testified that Bebensee's cauda equina syndrome was a result of surgical negligence. Dr. Watts testified that he thought the injury was due to the manipulation of the nerve tissues during surgery rather than the prior existence of a significant degree of swelling in the stenotic canal. Plaintiffs relied on testimony of Dr. Sanguino and Dr. Van Gilder to support their theory of excessive retraction. Dr. Robb also testified that he thought the stenosis was a result of scar tissue from the surgery.

The trial court examined all of the evidence presented and concluded that it did not support, by a preponderance, that the swelling which caused the plaintiff's condition was the result of the surgery. Therefore, the court, after examining this and other evidence presented, found no negligence and no malpractice.

■ Assuming that the evidence presented might support a finding that defendants were negligent in their surgical procedures, we cannot say that the evidence was so strong, so overwhelming, as to compel a finding of negligence as a matter of law. *See Anthony v. State,* 374 N.W.2d at 668.

### III.

■ Plaintiffs next argue that the trial court required them to disprove every other suggested or possible cause of the injuries incurred by Bebensee, thereby imposing a standard of proof higher than proof by a preponderance of the evidence. *See* Iowa R.App. P. 14(f)(8). Plaintiffs claim that the trial court required them to rule out the possibility of an allergic reaction as a causative factor in plaintiff's injuries. It is true that the trial court noted that an allergic reaction had not been ruled out. However, we do not find any indication in the record that the court's decision rested on the failure of plaintiffs to rule out allergic reaction as a causative factor. The bulk of the court's findings was based on its analysis that the plaintiffs did not prove that negligent retraction was the cause of the injuries. We see no indication in the record that the court forced the plaintiffs to adhere to a higher standard of proof than required. *See Wiley v. United Fire and Casualty Co.,* 220 N.W.2d 635 (Iowa 1975).

### IV.

■ Plaintiffs finally contend that they are entitled to a new trial because the trial court abused its discretion by improperly restricting the scope of cross-examination of Dr. Whitmore, expert witness for defendants.

The following exchange took place between counsel for plaintiffs, defendants, and the court:

MR. BALL: Your Honor, I would like to offer 57.

MR. WATERMAN: No objection.

MR. BALL: Well, before you say that, I had written some comments or I think those are my notes and I scratched them out when I got the copies and the copies all have those few little comments on the side.

MR. WATERMAN: I have no objection. I can give you a clean copy.

MR. BALL: I don't think it's going to bother the Judge.

THE COURT: It's not going to bother the Judge anymore than your last line of questioning. You know perfectly well I come from the community where this man is and I have heard him testify in court.

MR. BALL: I had no idea. I didn't have any idea whether you did or not.

THE COURT: And he isn't going to change his testimony because Bob Waterman is his lawyer, I have to tell you, and your comments aren't going to influence me. I know what your point of view is in this case pretty well by now.

MR. BALL: Well, of course.

THE COURT: Go ahead.

Plaintiffs contend this exchange was tantamount to a refusal to permit cross-examination of the witness on relevant topics. Furthermore, plaintiffs assert that these comments illustrated that the court had already made up its mind on the testimony offered. We do not read the record as a prohibition on cross-examination. In fact, counsel was invited to "go ahead." Though it is true that our courts put the highest priority on the ability to effectively cross-examine witnesses, *see Pickerell v.*

*Griffith,* 238 Iowa 1151, 1163, 29 N.W.2d 588, 595 (1947), it is difficult to discern, from this record, any arbitrary denial of this right. Also, even were we to designate this exchange as "unnecessary," we see no basis for finding that such remarks by the court amounted to an irregularity or an abuse of discretion which prevented the movant from having a fair trial. *See* Iowa R.Civ.P. 244(a). We will not reverse on the bare contention that the trial court's comments were per se prejudicial. *Wilson v. Ceretti,* 210 N.W.2d 643, 645 (Iowa 1973). Without a showing of how such comments materially affected his substantial rights, we will not presume prejudice occurred. *Id.* No showing of prejudice has here been made.

We find no reversible error.

AFFIRMED.