Ann H. SHEERIN, Administrator of the Estate of Louise Sheerin, Appellant,

v.

STATE of Iowa, Appellee,

and

Safer Foundation, Holiday Inns, Inc., Holin Co., L.M. Nelson, Sarkey's Inc., Ed Koop, and Bernard Hickman, Defendants.

No. 87–1821.

Supreme Court of Iowa.

Jan. 25, 1989.

Harold J. DeLange, II, Davenport, for appellant.

Thomas J. Miller, Atty. Gen. and Shirley A. Steffe, Asst. Atty. Gen., for appellee.

SNELL, Justice.

On September 5, 1981, Louise Sheerin was brutally stabbed to death at the Holiday Inn restaurant where she worked as a waitress in Bettendorf, Iowa. Bernard Hickman, a cook at the restaurant, was later convicted of first-degree murder in her death, and this conviction was affirmed on appeal. *See State v. Hickman,* 337 N.W.2d 512 (Iowa 1983); *see also Sheerin v. Holin Co.,* 380 N.W.2d 415 (Iowa 1986) (wherein we reversed and remanded a summary judgment granted to Sheerin's employer on the issue of whether Sheerin's death arose out of and in the course of her employment). Prior to the murder, Hickman had been convicted in 1970 of attempted arson and sentenced to two-years' imprisonment, and had been convicted in 1975 of assault with intent to commit rape and sentenced to twenty-years' imprisonment. At the time of the murder, Hickman was on parole for the assault; he had been released on parole on August 24, 1981.

On August 2, 1983, Ann Sheerin, Louise's mother and the administrator of her estate, brought this wrongful death action against the State and several other defendants. The essence of Sheerin's numerous allegations against the State was that the State negligently (1) granted Hickman parole, (2) failed to adequately supervise his parole, and (3) failed to warn his employer, persons who would come in contact with him, or the public generally of his proclivity to commit assaults and violence. This appeal is brought by Sheerin from the district court's grant of summary judgment to the State, which relied on *Anthony v. State,* 374 N.W.2d 662 (Iowa 1985).

I. *The Parole Decision.* In *Anthony,* we held that the decision by state officials to adopt particular terms for a prisoner's work-release plan was immunized from liability by the discretionary function exception of Iowa Code section 25A.14(1). *Id.* at 666. This exception to suits permitted by chapter 25A, the Iowa Tort Claims Act, provides:

> The provisions of this chapter shall not apply with respect to any claim against the state, to:
>
> 1. Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused.

Iowa Code § 25A.14(1). In this case, Sheerin contends the decision to have a parole program is a discretionary function, but that the application of the program's guidelines to an individual inmate is an operational function, for which the State may be held liable if negligently undertaken.

To determine whether a state official's decision constitutes a discretionary function, we have recognized a distinction between decisions made at the planning level and those made at the operational level. Planning level decisions require state officials to weigh competing interests, assess the practicality or monetary feasibility of a proposed course of action, or evaluate how the public interest will be best served. *Butler v. State*, 336 N.W.2d 416, 419 (Iowa 1983). In *Anthony*, we noted:

> The implementation of decisions made at the planning level is operational. . . .
>
> The distinction between the two levels is best illustrated in terms of judicial review. Policy decisions, such as when and where to construct a freeway, involve the weighing of the merits of social, political and economic factors traditionally held to be within the purview of the legislature. Judicial review of such decisions would be an apparent violation of the separation of powers principle. . . . Decisions made at the operational level, however, do not involve the same overriding policy determinations and can readily be reviewed under judicially manageable tort standards of due care and reasonableness.

*Anthony*, 374 N.W.2d at 667 (quoting *Butler*, 336 N.W.2d at 419–20). Application of these guidelines to this case persuades us the State's decision to parole Hickman was a protected discretionary function.

We have previously observed the legislature has a correctional philosophy of attempting to integrate convicted persons into the community, even though it involves some risk to the public. *Id.* This philosophy, of which work-releases and paroles are merely components, involves rehabilitative and practical considerations. Some of these considerations include weighing the risk a particular inmate poses to society against the rehabilitative opportunities afforded by work-release or parole and against the alternative risk posed by another inmate who might otherwise be paroled in order to avoid prison overcrowding. These assessments, made by executive branch officials vested with the responsibility, cannot properly be considered the mere implementation of general parole guidelines; they clearly involve the type of policy determinations required to make planning level decisions. The district court was correct to so hold.

■ II. *Supervision.* Sheerin's petition also alleged the State was negligent by "failing to adequately supervise, or provide for continuing treatment and evaluation of Hickman following his release from prison and the Davenport Halfway House." The gist of this allegation is that the State failed to sufficiently tailor Hickman's parole to account for the threat he posed to the community. *Cf. Anthony*, 374 N.W.2d at 668 (gist of negligent supervision allegation concerned failure of State to sufficiently structure work-release plan). Sheerin's allegation here attempted to provide a viable issue of liability in suggesting that the State was negligent in implementing the parole plan. However, nothing further by way of pleading or proof in resistance to the summary judgment motion was provided in support of this claim of negligent implementation. As with the decision to parole, the determination of the terms and conditions of parole is a discretionary function. The district court was correct in concluding the State was immune from liability on this count.

■ III. *Duty to Warn.* Sheerin's final contention is that the State had a duty to warn persons who would come in contact with Hickman, including Louise and her employer, and the public generally of the danger posed by him. In order to show the existence of a duty to warn, Sheerin alleged only that the county attorney who prosecuted Hickman for assault in 1975 had written a letter for Hickman's permanent file stating he believed Hickman should serve the maximum sentence allowed by law, and that Hickman would be a model prisoner but would kill someone upon release from prison. Tragically, this letter proved prescient. It did not, however, suggest Hickman had made a threat to Louise or to a person who could have been readily identified as Louise.

In the work-release setting of *Anthony*, we held "the duty to warn depends upon and arises from the existence of a prior threat to a specific identifiable victim," explicitly adopting the standard enunciated in *Thompson v. County of Alameda*, 27 Cal. 3d 741, 759, 614 P.2d 728, 738, 167 Cal. Rptr. 70, 80 (1980). *Anthony*, 374 N.W.2d at 669. In *Thompson*, the California Supreme Court concluded a more generalized duty to warn would be of little value in light of the large number of warnings that would be generated and the insignificant effect such warnings would have on safety measures. *Thompson*, 27 Cal.3d at 755–56, 614 P.2d at 735–36, 167 Cal.Rptr. at 77–78. Moreover, the court believed the resultant stigma imposed on released offenders would seriously jeopardize their rehabilitation. *Id.* Accordingly, the standard adopted focused on the forseeability of harm to an identifiable victim and not to an unidentifiable member of the general public. We find the reasons for this focus as persuasive now as we did in *Anthony*.

Applying the *Thompson* standard here, we conclude summary judgment for the State was appropriate. The State did not have a duty to warn Louise, her employer, or the general public.

AFFIRMED.

All Justices concur except LAVORATO, J., who takes no part.