Gary W. WHITEAKER, Appellant,

v.

STATE of Iowa, Appellee.

No. 84–1943.

Supreme Court of Iowa.

Feb. 19, 1986.

---

1. *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793, 804 (1964) (Stewart, J., concurring).

Robert A. Nading II of Hall & Nading, Ankeny, for appellant.

Thomas J. Miller, Atty. Gen., and Charles S. Lavorato, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, CARTER, and WOLLE, JJ.

WOLLE, Justice.

Plaintiff Gary W. Whiteaker brought this law action against the State for damages allegedly caused by malpractice of a lawyer (the State attorney) working in the consumer protection division of the Iowa Attorney General's office. Whiteaker's malpractice lawsuit is premised on his contention that an underlying claim and lawsuit would have resulted in a judgment for damages, or at least a favorable settlement, if the State attorney had not been negligent in several respects. Following a bench trial the trial court found that Whiteaker had not proved several elements of his malpractice action and entered judgment for the State. We affirm.

The underlying claim which Whiteaker alleges was mishandled by the State attorney arose out of his investment in postal vending machines. In 1975 Whiteaker had contacted a California-based company known as United Postal Corporation (UPC) to inquire about a newspaper advertisement for the sale of postal vending machines. He eventually purchased several machines, then became convinced that UPC had defrauded him. Whiteaker filed a complaint against UPC with the consumer protection division of the attorney general's office. He then met with the State attorney and had him write a letter demanding full restitution of Whiteaker's investment in the postal machines. UPC rejected that proposal.

In October of 1976 UPC hired an Iowa attorney to defend against the claim which the State attorney was threatening to file on behalf of Whiteaker and other persons who had purchased the vending machines. In a conversation concerning the possibility of settling both Whiteaker's personal damage claim and UPC's attempt to collect amounts due on his contract, UPC's attorney refused to negotiate with the State attorney because of what he believed was a conflict of interest. The conflict arose from the fact that the State attorney was representing all Iowa consumers and also the plaintiff on his individual stake in the matter. UPC's attorney at that point requested that the State attorney advise the plaintiff to obtain separate, private counsel. Plaintiff contends that the State attorney never informed him of this conversation or of UPC's willingness to negotiate a settlement with plaintiff through such separate private counsel as the plaintiff might have retained.

Subsequent proceedings on the underlying claim proved less than satisfactory to plaintiff. The State attorney filed a consumer fraud action to enjoin UPC from allegedly unfair sales practices and to require UPC to make restitution to Whiteaker and all other claimants. UPC responded with a cross-petition against Whiteaker for the unpaid balance owing on his contract to purchase vending machines.

After trial commenced on the underlying lawsuit, the trial court decided that the State attorney's conflict of interest required a separate, later trial of UPC's cross-petition against Whiteaker, and trial proceeded only on the State's action for injunctive relief. Following submission of the narrowed issues, the court granted the injunctive relief the State had requested, thereby prohibiting UPC from engaging in unfair sales practices and from collecting payments still due on outstanding UPC contracts.

The trial court conditioned granting Whiteaker relief in that action on his return of postage vending machines sold to him. This election requirement confused Whiteaker and the private counsel he by then had retained. When the trial court in the underlying lawsuit subsequently clarified its decree concerning the required election, it also directed Whiteaker to amend his pleadings by filing a separate cross-petition if he wished to proceed with his claim against UPC for damages personal to him. Whiteaker's private counsel did not file that amended cross-petition until eight months later, and permission to amend was denied. UPC's cross-petition against Whiteaker was still pending in district court in January of 1980 when UPC dissolved as a corporation.

Whiteaker filed his state tort claim and then this malpractice lawsuit on May 25, 1982, alleging that the State attorney's negligent handling of his personal interest in the UPC litigation had cost him a judgment for damages against UPC or at least an opportunity to receive a fair settlement of the claim personal to him. Following a bench trial, judgment was entered dismissing Whiteaker's malpractice action. The trial court's findings of fact and conclusions of law identified several issues on which Whiteaker had failed to satisfy his burden of proof. Whiteaker contends in this appeal that the evidence fully supported both his malpractice theories: (1) that the mishandling of his stake in the litigation deprived him of a favorable judgment for money damages against UPC on his underlying claim that never was brought to trial; and (2) that the State attorney's negligence deprived him of a favorable settlement.

## I. Scope of Review.

■ In our review of this law action the trial court's findings of fact have the effect of a special verdict. *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 54 (Iowa 1977); *Baker v. Beal*, 225 N.W.2d 106, 109 (Iowa 1975). We review the evidence in the light most favorable to the judgment. *Briggs*

*Transportation Co. v. Starr Sales Co.*, 262 N.W.2d 805, 808 (Iowa 1978). When there is doubt or ambiguity in the trial court's findings, they will be construed to uphold rather than defeat the judgment. *Eldridge v. Herman*, 291 N.W.2d 319, 321 (Iowa 1980). Moreover, when the trial court following a bench trial denies recovery because a party has failed to sustain its burden of proof on an issue, we will not interfere unless we find the party carried its burden as a matter of law. *Anthony v. State*, 374 N.W.2d 662, 664 (Iowa 1985); *Kurtenbach*, 260 N.W.2d at 54. To support a contrary judgment, the evidence supporting such a result must be so overwhelming that only one reasonable inference on each critical fact issue could be drawn. *Anthony*, 374 N.W.2d at 664-65; *Roland A. Wilson & Associates v. Forty-O-Four Grand Corp.*, 246 N.W.2d 922, 925 (Iowa 1976).

In reviewing the trial court's determination that Whiteaker had not sustained his burden of proof, we need focus only on two damage issues. The trial court found against Whiteaker on both issues. One issue concerns Whiteaker's claim that the underlying lawsuit would have been terminated with a favorable and collectible judgment against UPC but for negligence of the State attorney. The second issue concerns Whiteaker's claim that the State attorney's negligence deprived him of a favorable and collectible settlement. On neither issue was the evidence so strong as to compel the conclusion that Whiteaker satisfied his burden of proof as a matter of law.

## II. Proof of Success in the Underlying Lawsuit.

■ Proof of damages proximately caused by negligence is a fundamental element of a malpractice action. When the alleged legal malpractice consists of a client's assertion that the defendant lawyer has mishandled a claim or lawsuit, proof of damages necessarily involves analysis of the value of that underlying cause of action. *See Baker v. Beal*, 225 N.W.2d 106, 110-11 (Iowa 1975). The measure of injury

to the client's cause of action is the difference between what the client should have recovered but for the negligence, and what the client actually recovered. R. Mallen & V. Levit, *Legal Malpractice* § 303, at 354–55 (2d ed. 1981). Moreover, in proving the value of the underlying claim the client has the burden to show not just that a judgment in an ascertainable amount would have been entered, but the amount that would have been collected on that judgment. *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 160 (Iowa 1984); *Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524, 526 (Iowa 1983).

The rationale of this collectibility requirement is fully explained in *Beeck:*

> At the trial of the malpractice action, can the lawyer successfully contend that, regardless of the substantial amount of the probable verdict in the underlying suit, the measure of the client's damages is limited to the amount he would have actually recovered by way of a satisfied judgment? The question should be answered affirmatively, since otherwise the client would be placed in a better position as a result of the lawyer's malpractice than he would have been in had the attorney not been negligent.

350 N.W.2d at 160–61 (quoting from Barry, *Legal Malpractice in Massachusetts*, 63 Mass.L.Rev. 15, 18–19 (1978)).

■ The trial court found that Whiteaker had failed to prove by a preponderance of the evidence that any potential judgment against UPC would have been collectible. We must uphold that finding and the trial court's judgment on this first prong of Whiteaker's two-pronged damage theory unless the evidence established the contrary as a matter of law. The evidence was not that overwhelming.

Whiteaker did present some evidence concerning the litigation-related activities of UPC in several states, including Iowa, at about the time that the State obtained injunctive relief against it. UPC was operating in some fashion in thirty-six states, had offices and attorneys representing it in three states, paid at least one of those attorneys, and had posted a security bond in the amount of $22,245.00 in a Texas court. The trial court appropriately noted in its written decision, however, that it considered and gave little weight to that evidence. The court held that Whiteaker had produced insufficient evidence of UPC's financial status, assets, or ownership of property to satisfy his burden of proof on the collectibility issue.

The evidence in this record falls far short of establishing as a matter of law—the appropriate standard for our review—that UPC had the ability to pay all or part of any judgment Whiteaker might have obtained against it prior to January of 1980 when its corporate existence terminated.

### III. *Proof of a Lost Settlement Opportunity.*

On the second prong of Whiteaker's malpractice action, his allegation that he was deprived of a settlement opportunity, the evidence likewise was insufficient for us to find as a matter of law that the alleged negligence caused him to sustain damages.

We have not previously been called upon to identify the elements of this breed of malpractice claim. It appears that other courts have been addressing with increasing frequency clients' allegations that their attorneys have mishandled or misinformed them concerning settlement proposals. *See* R. Mallen and V. Levit, *supra*, § 580, at 722.

■ Attorneys handling claims certainly do have an obligation to communicate settlement proposals to their clients. *See, e.g., Joos v. Auto-Owners Insurance Co.*, 94 Mich.App. 419, 424, 288 N.W.2d 443, 445 (1979) ("[A]n attorney has, as a matter of law, a duty to disclose and discuss with his or her client good faith offers to settle."); *Rubenstein & Rubenstein v. Papadakos*, 31 A.D.2d 615, 615, 295 N.Y.S.2d 876, 877 (1968), *aff'd* 25 N.Y.2d 751, 250 N.E.2d 570, 303 N.Y.S.2d 508, (1969) ("failure to disclose an offer of settlement and submit to the client's judgment for acceptance or rejection is improper practice"). This obli-

gation is an important part of the attorney's duty to keep the client fully informed; "it is for the client to decide whether to accept a settlement offer." Iowa Code of Professional Responsibility for Lawyers EC 7–7; *see* EC 7–8:

A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations. A lawyer ought to initiate this decision-making process if the client does not do so. Advice of a lawyer to his client need not be confined to purely legal considerations. A lawyer should advise his client of the possible effect of each legal alternative. A lawyer should bring to bear upon this decision-making process the fullness of his experience as well as his objective viewpoint.

■ Of course the client asserting this type of malpractice claim against an attorney must prove not only a breach of that duty but also that the breach proximately caused damages. Here, Whiteaker was obligated to establish by a preponderance of the evidence that a settlement probably would have occurred but for the negligence of the State attorney. *See* R. Mallen and V. Levit, *supra,* § 580, at 729–31. An element of this cause of action is proof that the client and party against whom a claim has been asserted would have reached agreement upon a settlement in an ascertainable amount. *Id.*

■ In support of its conclusion that Whiteaker had not proved he was deprived of a favorable settlement with UPC, the trial court wrote:

No firm offer of settlement was made by UPC through [UPC's attorney] which was communicated to [the State attorney]. [The State attorney] did make an initial offer of settlement on behalf of Whiteaker for full restitution of monies in exchange of the machines. This is what Whiteaker wanted and he (Whiteaker) did not communicate anything differently to [the State attorney]. UPC did not give [UPC's attorney] authorization to settle under specific terms or for a

definite amount. UPC was considering a settlement for less than full restitution and the specific amount which was never resolved ultimately was to include a consideration of whether the machines would be returned or not—and if not returned, then UPC would have insisted on recapturing the value of the machines, as well as the amount of commission that went to the salesman. No evidence was presented on the value of the machines to UPC for potential settlement purposes or the amount of the salesman's commission. [UPC's attorney] received a communication from the company in April, 1977, that considered or discussed the plausibility of cancellation of Mr. Whiteaker's debt to UPC in return for Whiteaker dropping his claim against UPC. This was never transmitted in the form of an offer of settlement. There is no evidence, as of April, 1977, that UPC was willing to return any monies to Whiteaker. [UPC's attorney] testified that he personally would have considered a settlement offer of $16,000 but this was never authorized by UPC, nor made in form of offer to settle. He could not and did not speak for UPC.

From those findings, which are fully supported by the evidence, the trial court concluded that Whiteaker had failed to prove an element of this settlement prong of his malpractice action—the likelihood that a satisfactory settlement would have been concluded and paid by UPC. Nothing in the record establishes that UPC would in fact have authorized its attorney to offer Whiteaker the somewhat indefinite $16,000.00 proposal that UPC's attorney had in mind. Indeed, nothing in the record establishes the dollar value of any settlement proposal that UPC might have made in the event Whiteaker had retained private counsel at the outset. This is simply not a case where the State attorney failed to communicate to Whiteaker any concrete settlement offer made by UPC, or failed to communicate to UPC any proposal Whiteaker authorized him to make. UPC rejected the only proposal that Whiteaker authorized

the State attorney to make, an offer the State attorney properly communicated to UPC.

Whiteaker did not establish as a matter of law on this record that his claim would have resulted in a favorable settlement if the State attorney had more fully counseled Whiteaker or otherwise handled the claim differently in any respect.

The element of uncertainty as to collectibility, fatal to the first prong of Whiteaker's malpractice claim, also flaws his settlement theory. The evidence does not overwhelmingly establish that UPC had the financial wherewithall to fund any settlement proposal which its attorney may have thought reasonable. Neither does the record establish that the lawyer defending UPC in the Iowa litigation had full knowledge of UPC's ability or inability to pay any settlement offer he might have recommended.

We need not address Whiteaker's other assignments of error in this vigorously-contested malpractice action. Whiteaker did not satisfy his obligation in this appeal to show as a matter of law that the alleged negligence of the State attorney, which the State contested, proximately caused damages on either of his two theories—a more favorable outcome by judgment or by settlement. We do note that the trial court found Whiteaker had not proved other elements of his action for legal malpractice.

We affirm the judgment entered by the trial court denying Whiteaker's claim against the State.

AFFIRMED.