James M. BURKE and Maurita A. Burke, Appellees,

v.

D. ROBERSON, Appellant,

and

J.R. Crowley, Defendant.

No. 85–1731.

Supreme Court of Iowa.

Dec. 23, 1987.

Charles W. Brooke of Lane & Waterman, Davenport, for appellant.

Tom Riley and Mary K. Hoefer, Cedar Rapids, for appellees.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

LARSON, Justice.

James and Maurita Burke sued Dennis Roberson, a lawyer, and J.R. Crowley, a real estate salesman, for the faulty drafting of a contract to sell the Burkes' farm. A jury awarded substantial damages to Burkes and assessed sixty-seven percent of the negligence to Attorney Roberson, twenty percent to Crowley, and thirteen percent to Burkes. Roberson appealed, and Burkes cross appealed. We reverse and remand for a new trial on the appeal and affirm on the cross appeal.

Burkes tentatively agreed to sell their 250–acre farm to Alan and Carolyn Stampe for $1,050,000, provided Stampes were able to sell their own 158–acre farm for enough money that their "boot" payment to Burkes would not exceed $465,000. An offer embodying that concept was presented by Burkes and Crowley to Attorney Roberson for his examination. Roberson examined the contract and, after a discussion among the principals, approved this "addendum," apparently drafted by Crowley:

8. CLARIFICATION: This is a PURCHASE AGREEMENT, sold or not sold the Stampe's will not later than March 1, 1983, transfer all their right and title to the Elvira farm over to the Burke's, as down pay't on the Welton farm.

9. The Burke's would if necessary accept a contract sale of the Elvira farm from a qualified buyer, subject to previous terms stated, minimum down payment of $250,000.00, 2% principal pay'ts, 10% Int. for five years.

10. If the Elvira farm is not sold as of March 1, 1983, the Burke's would sell the farm first year of ownership, and the Stampe's would guarantee the sale price of $699,843.75, net after commission, if there should be a deficit it would be added on to the contract balance, if there is a surplus it would be subtracted from the contract balance due Burke's, and *during that year the Stampe's would have right to approve any sale less than amount stated above.*

(Emphasis added.) The effect of the italicized language was to give Stampes a virtual veto right in any contract between Burkes and Stampes, if the Stampe land was not sold at the agreed price before the March 1, 1983, settlement date. The contract, as so amended, was signed on November 6, 1981.

At the time of the contract, farmland values were at an all-time peak, but they soon began a virtual free-fall. Stampes' farm could not be sold at the "guaranteed" price as provided by the contract; in fact, no offers were received on it. Stampes refused to perform under the contract, and Burkes began an action for specific performance. Burkes lost the specific performance suit because, as the court held, Stampes' veto power rendered the contract unenforceable. Burkes appealed the ruling in the specific performance suit but dismissed the appeal after they filed their negligence suit against Roberson and Crowley. (Crowley has filed for bankruptcy protection, and his case is not before us.)

On appeal, Roberson does not challenge the jury's finding of negligence, but he does assert error in ten other respects. One of these, concerning proximate cause, requires a reversal, and we will discuss that issue first. Two issues are raised in Burkes' cross appeal: (1) submitting the issue of contributory negligence and (2) disallowing interest expenses incurred by Burkes in reliance on the Stampe contract.

I. *The Proximate Cause Issue.*

In representing a client, an attorney is required to exercise that degree of care, skill, diligence and knowledge ordinarily possessed and exercised by members of the legal profession in good standing in similar communities. *See Sheets v. Letnes, Marshall & Fiedler, Ltd.,* 311 N.W.2d 175, 180 (N.D.1981). In lawyer malpractice cases, the plaintiff must show:

1. the existence of an attorney-client relationship giving rise to a duty;

2. that the attorney, either by an act or a failure to act, violated or breached that duty;

3. that the attorney's breach of duty proximately caused injury to the client; and

4. that the client sustained actual injury, loss, or damage.

D. Meiselman, *Attorney Malpractice: Law and Procedure* § 3:1, at 39–40 (1980). Concerning the third element, proximate cause, Meiselman states:

[I]n attorney malpractice, the causal requirement is worded in the negative. For example, it is often said that the plaintiff can recover against the defendant-attorney only when it can be shown that the injury would not have occurred "but for" the negligence of the lawyer. Thus, the plaintiff must establish that the total or partial loss would not have occurred had it not been for some act or omission on the part of the attorney. In other words, the plaintiff must show that "but for" the negligence of the lawyer, the client's cause of action or defense against a claim in the underlying action would have been successful.

*Id.* at 40.

A showing of proximate cause requires proof that the client would not only have prevailed in the underlying claim but that a judgment in the client's favor would have been collectible. *See Whiteaker v. State,* 382 N.W.2d 112, 114–15 (Iowa 1986); Meiselman § 3:4, at 43–44 (requirement of solvency of defendant in underlying case is "both longstanding and widespread"). In *Whiteaker,* we said:

Proof of damages proximately caused by negligence is a fundamental element of a malpractice action. When the al-

leged legal malpractice consists of a client's assertion that the defendant lawyer has mishandled a claim or lawsuit, proof of damages necessarily involves analysis of the value of that underlying cause of action. *See Baker v. Beal*, 225 N.W.2d 106, 110–11 (Iowa 1975). The measure of injury to the client's cause of action is the difference between what the client should have recovered but for the negligence, and what the client actually recovered. R. Mallen & V. Levit, *Legal Malpractice* § 303, at 354–55 (2d ed. 1981). Moreover, in proving the value of the underlying claim the client has the burden to show not just that a judgment in an ascertainable amount would have been entered, but the amount that would have been collected on that judgment. *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 160 (Iowa 1984); *Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524, 526 (Iowa 1983).

The rationale of this collectibility requirement is fully explained in *Beeck:*

> At the trial of the malpractice action, can the lawyer successfully contend that, regardless of the substantial amount of the probable verdict in the underlying suit, the measure of the client's damages is limited to the amount he would have actually recovered by way of a satisfied judgment? The question should be answered affirmatively, since otherwise the client would be placed in a better position as a result of the lawyer's malpractice than he would have been in had the attorney not been negligent.

350 N.W.2d at 160–61 (quoting from Barry, *Legal Malpractice in Massachusetts*, 63 Mass.L.Rev. 15, 18–19 (1978)). 382 N.W.2d at 114–15. This rule of proximate cause for malpractice cases is a fair rule, allowing compensation to a client while not permitting the client to profit from the lawyer's negligence. *See Beeck*, 350 N.W.2d at 160–61. At trial, the court rejected Roberson's objections based on a failure of proof of proximate cause.

■ "Collectibility" as it is used in the present case is broader than a recovery of money; it includes all of the rights available to a seller under an installment contract as will be discussed later. Nevertheless, in the interest of brevity, we will refer to the concept as collectibility. Here, the issue turns on what rights Burkes lost as a result of the negligent drafting of the contract. In other words, how well could the Burkes have done against Stampes under an enforceable contract? Presumably, Burkes could have forfeited the contract under Iowa Code chapter 656 and retained the Stampes' $50,000 "deposit." They also could have obtained specific performance of the contract.

Burkes acknowledge the general rule that a malpractice recovery cannot exceed the amount which would have been collectible under the underlying claim, but they argue that the rule is inapplicable under the facts of this case. They pose three scenarios which might have occurred if the contract had been properly drawn, any one of which would have been better for them than the recovery they made in their suit against Roberson. These scenarios are: (1) Stampes would have signed an enforceable contract and performed, (2) Stampes would have signed an enforceable contract and not performed, or (3) Stampes would have refused to sign at all.

It is asserted that, under any of these scenarios, Burkes would have been better off. Had Stampes signed and performed, Burkes would have their full contract price. Under the second possibility, had Stampes signed and not performed, Burkes could have obtained specific performance and thus received the Stampes' downpayment (either $535,000, which represents Stampes' claimed equity in the farm if it had been sold on contract before the settlement date, or the farm itself). Burkes then could foreclose to get their farm back and presumably could end up owning both farms. Under the third scenario, had Stampes not signed the contract at all, someone else would have bought Burkes' farm. Burkes claim the latter result is supported by opinion evidence that the "likelihood was good" that Burkes could have sold the farm to someone else.

While these scenarios might have worked out better for Burkes than the malpractice recovery, it is not certain that that would be the case. Success for the Burkes under the last two scenarios would turn on several factors which were not clearly established in the record. They are: (1) the value of Stampes' equity in their farm (and thus the value to Burkes in the event of a specific performance suit), and (2) the value and salability of Burkes' farm to some other party under the third scenario. All of these factors were contested at trial, and there was no finding as to any of them. The jury only considered the issue of Burkes' lost opportunity from the time of the breach until the dismissal of the specific performance appeal.

We have said that it is a rare case when an issue of collectibility in a malpractice case is so clear that it can be decided as a matter of law. *See Pickens*, 328 N.W.2d at 526. We decline Burkes' invitation to do it here. The case must be reversed and remanded for a determination of proximate cause insofar as it pertains to the collectibility of any underlying claim against Stampes.

## II. *The Remaining Issues.*

Several other issues are raised in the direct and cross appeals which will likely recur on any retrial. We therefore will discuss them briefly. Roberson raises nine additional issues: (1) submission of "lost opportunity" as a measure of damages, (2) failing to deduct from the judgment the income received by Burkes from their farm during the period of litigation, (3) failing to attribute Crowley's fault to Burkes, (4) failing to instruct that an attorney is not a guarantor, (5) failing to include all of Roberson's specifications of Crowley's negligence, (6) admitting evidence as to the present value of the Burke farm, (7) failing to instruct on the effect of the apportionment of fault, (8) failing to grant a new trial for all of the foregoing grounds, and (9) ordering, *nunc pro tunc*, a joint and several judgment.

■ Under the first issue, Roberson argues that there was insufficient evidence to show that Burkes actually had an opportunity to sell the farm during the pendency of the aborted specific performance litigation, and, therefore, it was error to submit the theory of lost opportunity.

While we agree that the evidence of a potential buyer for the farm was thin, we believe there was sufficient evidence to submit the issue. In this respect, it has been stated that

> [n]o one can say precisely what the plaintiffs lost or should have lost in such situations, but difficulty or imprecision in calculating damages does not exculpate the attorney. Even though damages cannot be calculated precisely, they can be estimated. Otherwise, attorneys could avoid liability merely because damages are difficult to measure. The beneficiaries would tend to be those attorneys whose errors were the greatest and whose incompetence succeeded in complicating the issue of calculating the extent of the client's injury.

R. Mallen & V. Levit, *Legal Malpractice* § 302, at 353–54 (2d ed. 1981).

We believe under the circumstances there was sufficient evidence to submit the issue to the jury. There was testimony that the farm could have been sold for an amount near that offered by Stampes. Lost opportunity to sell during the pendency of the specific performance trial and the appeal was properly submitted to the jury.

We find no merit in any of the remaining issues. We believe, first, it was proper for the court to refuse to deduct from the judgment the income received by Burkes from their farm during the period of litigation, thus offsetting any interest which might be obtained on the judgment against Roberson.

Also, it was not error to refuse to instruct that an attorney is not a guarantor; to include all of the specifications of negligence against Crowley; to admit evidence as to the present value of the Burke farm (because that would have some bearing on the value as of the time of the termination of the specific performance appeal); or in failing to instruct on the effect of the apportionment of fault or any of the other

remaining issues. Further, we conclude that it was not error for the court to enter a *nunc pro tunc* order providing for joint and several liability against Roberson, because he was found to be over fifty percent negligent. *See* Iowa Code § 668.4.

We summarily reject Burkes' issues on cross appeal. There was some evidence that, despite Roberson's protestations about the effect of the contract, Burkes insisted on signing it even in the face of problems as pointed out by Roberson. Under such circumstances, it was not error to submit specifications of their own negligence. Concerning contributory or comparative negligence generally in lawyer malpractice cases, see R. Mallen & V. Levit § 351, at 376–82.

The court was also correct in disallowing the interest expenses incurred by Burkes, in the building of a new home, in reliance on the contract. These damages were too remote to be a proper element of damage in the malpractice case.

REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS APPEAL.