**BLACKHAWK BUILDING SYSTEMS, LTD., An Iowa Corporation, Appellee,**

v.

**The LAW FIRM OF ASPELMEIER, FISCH, POWER, WARNER & ENGBERG; and Thomas D. Wynia, Appellants.**

No. 87–515.

Supreme Court of Iowa.

Aug. 17, 1988.

Charles W. Brooke and Carole J. Anderson of Lane & Waterman, Davenport, for appellants.

T. Todd Becker of Tom Riley Law Firm, Cedar Rapids, for appellee.

SCHULTZ, Justice.

This appeal in a malpractice action is from a judgment in favor of the plaintiff corporation against its former attorney and his prior law firm. A jury returned a verdict for the plaintiff and the trial court entered judgment accordingly. Although defendants raise several contentions, we believe the determinant issue involves the sufficiency of the evidence to support the submission of the proximate cause question to the jury. As we believe that the trial erred in submitting this issue, we reverse.

Blackhawk Building Systems, Ltd. (Blackhawk), an Iowa corporation, operated a business in Burlington, Iowa. They commenced this malpractice action against the law firm of Aspelmeier, Fisch, Power, Warner and Engberg, of Burlington and the firm's former associate, Thomas D. Wynia of Ames. One of Blackhawk's incorporators, Marcus Bergren, Jr., an original plaintiff, and an individual defendant were dismissed out of the action. These dismissals are not an issue on appeal.

The legal malpractice claim was grounded on Blackhawk's assertion that Wynia was negligent in drafting an employment agreement between Blackhawk and its employee, J.L. Parsons. Blackhawk maintains that Wynia should have suggested and included a non-compete clause in the agreement.

Prior to 1979, Bergren and his brother had been in the construction business doing concrete work. The Bergrens did a great deal of work for the company that had a franchise to sell and construct Butler Buildings for the five-county area near Burlington. Bergren learned that the Butler franchise was available for purchase and, on June 25, 1979, had Wynia draft a purchase agreement for the Butler Building dealership and its assets. In drafting this purchase agreement, Wynia included a covenant for the seller not to compete. Bergren, however, deleted this provision without consulting Wynia based on the seller's advice that he would already be protected from competition by the Butler franchise agreement.

Jack Parsons had previous experience with Butler and had worked as a sales representative for the Burlington franchise. Bergren orally agreed to employ Parsons to be the president, manager and sales representative for the company that he was about to incorporate. Bergren wanted to keep his own name from being publicly associated with the Butler franchise because his cement business did subcontracting for Butler competitors. In accordance with this desire, Bergren had Wynia incorporate Blackhawk on July 5, showing Parsons as the incorporator. On July 20, Parsons, as president of Blackhawk, entered into a franchise agreement with Butler Manufacturing Company to sell and construct Butler buildings in the five-county area. This agreement was neither drafted nor pre-approved by Wynia.

Sometime during this period, Wynia suggested to Bergren that Blackhawk should have an employment contract with Parsons. Wynia drafted the employment contract and Parsons and Bergren executed it on behalf of Blackhawk about September 1. The contract provided that either party may terminate the contract upon giving 90 days notice. The contract did not contain a non-compete clause. Wynia testified that he suggested such a clause, but that Ber-

gren did not think it was necessary. Bergren, on the other hand, testified that he did not remember discussing a covenant with Wynia.

The record indicates that Bergren and Parsons got along well at first. The business did not prosper however, losing money in three of the first four years of operation. Blackhawk was unable to pay its taxes and business obligations and had unpaid judgments against it. In addition, the company was unable to obtain bonding. The relationship between Parsons and Bergren deteriorated as the business did. In April 1983, Parsons resigned from Blackhawk. A week or so later Butler terminated Blackhawk's franchise under a provision in their agreement which allowed termination if a signatory to the franchise agreement left the business. Parsons formed his own company, later obtained the Butler franchise and went into competition with Blackhawk. Shortly thereafter, Blackhawk ceased to be an ongoing business operation.

■ Although defendants raise several issues, we shall limit our discussion to the issue of proximate cause. We shall assume without deciding that there was substantial evidence of negligence on the part of Wynia to support the jury's verdict. Even though negligence has been established, proximate cause must be determined separately. *Whiteaker v. State*, 382 N.W.2d 112, 116 (Iowa 1986). It does not necessarily follow negligence. *Oak Leaf Country Club, Inc. v. Wilson*, 257 N.W.2d 739, 746 (Iowa 1977).

■ The burden of proving proximate cause in a legal malpractice action is the same as any other negligence action. To recover, the injured must show that, but for the attorney's negligence, the loss would not have occurred. *Burke v. Roberson*, 417 N.W.2d 209, 211 (Iowa 1987) (*citing* D. Meiselman, *Attorney Malpractice: Law & Procedure* § 3:1, at 39–40 (1980)); R. Mallen and V. Levit, *Legal Malpractice* § 102, at 177–78 (2d Ed.1981). In an action based upon the negligent handling of a law suit, the plaintiff must prove that absent the lawyer's negligence, the underlying suit would have been successful. *Baker v.*

*Beal*, 225 N.W.2d 106, 109 (Iowa 1975). As applied to this situation, plaintiff would be required to show that absent the lawyer's negligence, Parsons would have signed a contract containing a covenant not to compete which would have effectively prevented the loss of the Butler franchise and the subsequent demise of Blackhawk. Essential to this chain of events, the plaintiff must show that Parsons would have agreed to a covenant not to compete.

The trial court denied defendant's directed verdict motion made at the close of plaintiff's evidence and a post-trial motion for judgment notwithstanding the verdict. Defendants urge that there was inadequate evidence to establish that Parsons would have signed the employment contract if the non-compete clause was included. In ruling on the post-trial motion the district court dismissed this contention stating, "the jury may reasonably infer that the special arrangements to engage Parsons as a long term employee and business associate that Parsons would have signed a covenant not to compete." We cannot agree with this conclusion.

■ First the trial court was mistaken in its opinion that there were special arrangements to engage Parsons as a long-term employee. No evidence was presented regarding the terms of employment decided upon in the original oral agreement. When the duration of an employment contract is indefinite, the contract may be terminated at will by either party. *Drake v. Block*, 247 Iowa 517, 520–21, 74 N.W.2d 577, 580 (1956). Their written employment contract allowed either party to terminate upon 90 days' notice. While Bergren testified he intended to have Parsons as a company employee for a long period of time, the actual agreement allowed for early termination. There was no special arrangement for long-term employment which would substantiate an inference that Parsons would have agreed to a covenant not to compete.

■ The record is devoid of any evidence that would allow the jury to infer that Parsons would have agreed to a non-com-

pete clause. The circumstances show that when the employment contract was signed, the business arrangements were already in place. Blackhawk was incorporated and doing business with Parsons as its president. The franchise agreement was signed. The covenant not to compete was solely for Blackhawk's benefit and was detrimental to . Parsons' interests. While Blackhawk argues that Parsons would benefit by continued employment, the evidence is undisputed that Bergren sought Parsons out as an employee because of his experience and knowledge of this business area. There is no evidence that Parsons would have faced being fired if he had refused to agree to such a covenant. Blackhawk further points out that Bergren and Parsons were on friendly terms at the time. On the other hand, there is no record of what the interaction was between the parties when the employment contract was signed. We have no evidence of Parsons' caution or lack of caution in executing this contract. The record is simply silent concerning any forces which would have caused Parsons to agree to a covenant not to compete when it had not been previously agreed upon.

On this record, we do not believe there was sufficient evidence to connect plaintiff's claimed damages to the negligence of Wynia. The trial court should have directed a verdict for the defendant, or perhaps more appropriately, granted defendant's post-trial motion for a judgment notwithstanding the verdict.

■ In arriving at this decision we are well aware of our well-known rule that questions of proximate cause are generally for the jury and only in exceptional cases may they be decided as matters of law. *See* Iowa R.App.P. 14(f)(10). We also note that an appellate court ruling on such motions must view the testimony in the light most favorable to the prevailing party below. However, it is the plaintiff's burden to establish that absent the defendant's negligence, the loss would not have occurred. Here it was vital to show that Parsons would have agreed to a contract containing a covenant not to compete. Testimony of a friendship arising out of a business relationship is insufficient to meet this burden. A jury cannot be left to speculate, but rather, must be provided with facts affording a reasonable basis for ascertaining the loss. *Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524, 526 (Iowa 1983).

In legal malpractice cases, other jurisdictions have also required proof that the loss would not have occurred absent the negligent conduct, proof of which cannot be satisfied by conjecture. *Zych v. Jones*, 84 Ill.App.3d 647, 652, 40 Ill.Dec. 369, 374, 406 N.E.2d 70, 75 (1980) (plaintiff failed to produce evidence of a defense in underlying automobile case held to have failed proximate cause); *Whitehead v. Cuffie*, 185 Ga. App. 351, 364 S.E.2d 87, 89 (1987) (claim that earlier settlement would have resulted in a larger sum rejected as lacking proximate cause where plaintiff's own opinion is only evidence presented); *Stansbery v. Schroeder*, 412 N.W.2d 447, 451 (Neb.1987) (no evidence that personal guarantees on loan would have prevented default held insufficient to show proximate cause); *Lamb v. Barbour*, 188 N.J.Super. 6, 12, 455 A.2d 1122, 1125 (1982) (conjecture, surmise or suspicion insufficient to satisfy proximate cause); *Becker v. Julien, Blitz & Schlesinger, P.C.*, 95 Misc.2d 64, 68, 406 N.Y.S.2d 412, 414–15 (1977) (conclusory allegations held insufficient to show claim worth more than settlement amount received), *modified on other grounds*, 66 A.D.2d 674, 411 N.Y.S.2d 17 (1978); *Daugert v. Pappas*, 104 Wash.2d 254, 260, 704 P.2d 600, 604 (1985) (claim must be based on more than mere speculation and conjecture to satisfy the "but for" test.) In *Becker*, the New York court indicated that the plaintiff must demonstrate that but for the alleged act of malpractice he would have been able to proceed in a manner other than that which actually eventuated. *Becker*, 95 Misc.2d at 68, 406 N.Y.S.2d at 414. The court rejected the plaintiff's claim that his lawyer had made an improvident settlement when there was not the scantiest showing that the value of his claim, prior to the settlement, exceeded the amount of the settlement. *Id.* at 68, 406 N.Y.S.2d at 414. Similarly in *Lamb*, where the clients main-

tained that their attorney failed to advise them not to acquire a business, the New Jersey court relied upon the absence of testimony by the plaintiffs "as to any circumstances reasonably to be hypothesized under which they could have been dissuaded from completing the transaction" in rejecting their claim. *Lamb,* 188 N.J.Super. at 12–13, 455 A.2d at 1125. The Georgia court in *Whitehead* accordingly found no merit in a client's claim that his lawyer had delayed settlement with an insurance carrier when there was no evidence presented that the insurance carrier would have settled earlier. *Whitehead,* 364 S.E.2d at 89.

We hold that a jury issue was not engendered on causation. Accordingly, we must reverse the rulings of the trial court. Our holding on the issue of causation is dispositive of the other claims made by the appellants including claims of error and taxing of the cost. The cost will now be assessed against the plaintiff.

REVERSED.

CARTER, Justice (dissenting).

I dissent.

We have repeatedly observed that issues of proximate cause are ordinarily for the jury and it is only in exceptional circumstances that they may be decided as a matter of law. *Gremmel v. Junnie's Lounge,* 397 N.W.2d 717, 721 (Iowa 1986); *Iowa Elec. Light & Power Co. v. General Elec. Co.,* 352 N.W.2d 231, 234 (Iowa 1984); *Casey v. Koos,* 323 N.W.2d 193, 198 (Iowa 1982); *Calkins v. Sandven,* 256 Iowa 682, 685, 129 N.W.2d 1, 3 (1964); Iowa R.App.P. 14(f)(10).

Ordinarily, the determination of proximate cause in a negligence action involves situations where an injury or loss could have occurred from two or more causes. The trier of fact must decide whether it occurred from that cause upon which the plaintiff's theory depends. The issue of proximate cause in the present case is unusually complicated, however, because it involves the resolution of a question which is purely hypothetical in nature.

A retrospective determination concerning how a person would have reacted in a situa-

tion never presented to that person will always involve some degree of speculation. Consequently, whether in the present case Parsons would have signed the agreement if it had contained a covenant not to compete is a matter which is not susceptible of exact determination. I submit, however, that the difficulty of obtaining precise proof in such situations should not be viewed as an insurmountable obstacle to permitting recovery. Juries should be free to decide the probabilities of the situation based on reasonable inferences which may be drawn from the circumstances of the transaction.

Notwithstanding the inherent uncertainty involved, I believe that, if the facts of the present case are viewed most favorably to the plaintiff, the issue of causation was for the jury to decide. The jury could reasonably have inferred it was more likely than not that Parsons, who had only recently begun working for plaintiff and had been designated as president of the corporation, would have acceded to his employer's wishes concerning a noncompetition agreement.

ANDREASEN, J., joins this dissent.