Harold E. CRUTCHLEY and Anita S. Crutchley, Appellees,

v.

FIRST TRUST AND SAVINGS BANK, Executors of the Estate of Don Fishel, Appellant,

Jim Short, Defendant.

No. 88–951.

Supreme Court of Iowa.

Jan. 24, 1990.

Rehearing Denied Feb. 16, 1990.

theory of "humanizing the victim" was accepted, will not be applicable in most murder prosecutions.

Mark H. Rettig and Thomas R. Pence of Hines, Pence, Day & Powers, Cedar Rapids, for appellant.

Peter C. Riley of Tom Riley Law Firm, P.C., Cedar Rapids, for appellees.

Considered by SCHULTZ, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

The estate of Don Fishel, a deceased real estate salesperson, appeals from a judgment awarding damages to plaintiffs, Harold E. Crutchley and Anita S. Crutchley. Plaintiffs' action sought to recover for the alleged negligence and breach of contract of Fishel and Jim Short, two licensed real estate agents who represented them in the sale of 600 acres of land in Linn County. Short, who is also a defendant against whom judgment was entered, has not appealed.

In 1980, the plaintiffs listed 600 acres of land for sale through the Mundel, Long & Luce real estate office in Cedar Rapids. Fishel and Short were salespersons associated with that firm. Plaintiffs were well acquainted with Fishel, who had previously represented them in selling other property. Short assisted Fishel on some of the prior sales as well as the transaction giving rise to the present controversy. After advertisement of the 600–acre tract in publications of general circulation in the Midwest, Carl Esker and two medical doctors participating with him agreed to pay a total consideration of $1,650,000 for the property pursuant to an installment contract. The contract called for a $300,000 down payment with the remaining balance to be paid over a twenty-year period.[1]

The contract of sale came into being as a result of the plaintiffs' acceptance of an offer to purchase which contained the following language:

> In the event of default on this contract, the sellers shall only be entitled to possession of the real estate as of the date of said default. Buyers will only lose their interest in said property and any payments made to date of default.

The parties to this litigation have referred to this provision as a nonrecourse clause. Although the price and payment terms of the installment contract evolved from a series of offers and counteroffers, the nonrecourse clause had been included in the original offer and was not altered or amended in any way in the subsequent negotiations between buyers and sellers.

In 1985 the buyers defaulted on the contract. As a result, plaintiffs regained possession of the farmland by forfeiture proceedings pursuant to Iowa Code chapter 656. Plaintiffs retained the down payment

---

1. No additional principal payments were required to be made during the first ten years of the contract. Accrued interest was to be paid annually commencing March 1, 1982.

and annual interest payments received on March 1 of 1982, 1983, and 1984. The parties to this action are in agreement that, as a result of the nonrecourse clause, plaintiffs were entitled to no further relief against the buyers.

Due to a plummeting decline in the value of farm real estate between 1980 and 1985, the value of the 600–acre tract plus the payments which plaintiffs received prior to default did not equal the contract price to be paid by the defaulting parties. Prior to bringing the present action, the plaintiffs sought federal bankruptcy protection. As a part of those proceedings, the 600–acre tract was liquidated in 1986 for $576,465.

On June 9, 1986, plaintiffs commenced the present action against Jim Short and the estate of Fishel, who by that time was deceased, seeking recovery of money damages on theories of negligence and breach of contract. They contended that Short and Fishel misadvised them concerning the legal significance of the nonrecourse clause and failed to observe the provisions of article 17 of the National Association of Realtors' Code of Ethics by not recommending that plaintiffs consult legal counsel on a matter in which their interests required it.

At the trial, plaintiff Harold Crutchley testified that, when the property was sold to Carl Esker and his associates, the sellers did not understand that the nonrecourse clause in the contract left them without any recourse other than to regain the property. Crutchley testified that Short had advised the sellers that this clause only protected certain of the buyers' assets from execution sale and protected the buyers' spouses from personal liability. Crutchley testified that he would not have accepted the offer to buy the land had he realized the legal import of the nonrecourse clause. He stated that neither Fishel nor Short recommended that plaintiffs seek legal counsel in culminating this transaction and that Short had affirmatively dissuaded them from so doing.

Fishel was deceased at the time of trial, but Short was called as a witness. Short conceded the applicability of article 17 of the National Association of Realtors' Code of Ethics for purposes of determining his and Fishel's responsibilities to their clients. He denied that either · he or Fishel had dissuaded plaintiffs from seeking the advice of legal counsel on this transaction. He testified that plaintiffs were sophisticated in real estate transactions and that on other land sales in which Short had assisted them they had freely consulted attorneys concerning questions over legal matters. He testified that both he and Fishel had fully explained the legal significance of the nonrecourse clause to the plaintiffs and that he was satisfied they understood it and accepted it as a means of obtaining a favorable sale.

The case was submitted to the jury under the comparative fault provisions of Iowa Code chapter 668 (1987). The jury found that defendants were at fault under plaintiffs' breach-of-contract and negligence claims and that plaintiffs themselves were also at fault. Fault was apportioned twenty-five percent to plaintiffs and seventy-five percent to Short and the Fishel estate collectively. In response to a special interrogatory, the jury determined that the total amount of damages sustained by plaintiffs was $715,000. After a reduction of damages for plaintiffs' percentage of fault, judgment was entered against the two defendants jointly and severally for the sum of $536,250.

The issues raised by the Fishel estate on appeal concern (1) the sufficiency of the evidence to sustain a claim of realtor malpractice, (2) whether the district court erred in permitting a new theory of damages to be injected into the case during the trial, and (3) the adequacy of the district court's jury instructions concerning the liability and damage issues. Other facts which bear on these matters will be considered in connection with our discussion of the legal issues presented.

### I. The Negligence and Breach–of–Contract Issues.

■ We first consider the Fishel estate's contention that there was insufficient evidence presented to permit a finding of negligence or breach of contract by Fishel or

Short and that the district court should have granted its motion for judgment notwithstanding the verdict. Throughout the course of the litigation, plaintiffs' breach-of-contract claims have been predicated on the same alleged acts or omissions as their negligence claims. Consequently, for purposes of the issues under discussion, the negligence and breach-of-contract claims are indistinguishable.

The district court permitted the jury to find that the defendants were negligent or had breached their duties under the listing agreement in the following particulars: (1) by giving an inadequate and incorrect explanation of the nonrecourse provision, (2) by not affirmatively recommending that plaintiffs obtain legal counsel in a matter in which their interests required it, and (3) in discouraging plaintiffs from seeking legal counsel. Although the Fishel estate strenuously argues that the evidence fails to support any of these theories of negligence or breach of contract, we believe that based on the evidence presented a jury might have found adversely to defendants as to any or all of the three specifications we have listed.

Plaintiffs offered evidence, including the testimony of Short himself, that both Short and Fishel were required to maintain the standards articulated in article 17 of the National Association of Realtors' Code of Ethics in representing their clients. That standard reads as follows:

> The Realtor shall not engage in activities that constitute the unauthorized practice of law and shall recommend that legal counsel be obtained when the interest of any party to the transaction requires it.

We recognized in *Menzel v. Morse*, 362 N.W.2d 465, 473 (Iowa 1985), that proof of a violation of this standard is evidence upon which a trier of fact may find negligence.

The evidence concerning that which was said or not said by the parties to the litigation concerning the legal effect of the nonrecourse clause or the desirability of plaintiffs seeking legal counsel was in sharp dispute. If, however, the evidence presented is viewed in the light most favorable to the plaintiffs, it will support a finding by the jury that defendants failed to exercise the standard of care required of persons engaged in their business or profession. *See* Restatement (Second) of Torts § 299A (1965).

Because of the interrelationship between the negligence and breach-of-contract issues in the present case, we conclude that proof of a breach of this standard of professional conduct would also establish a violation of the agent's duties under the listing agreement with the broker. The district court did not err in accepting the jury's findings on the negligence and breach-of-contract issues.

## II. *The Proximate Cause Issues.*

The second issue concerns the Fishel estate's contention that, assuming negligence or breach of contract has been established, there was an insufficient showing of a causally connected injury to permit plaintiffs to recover. This contention is based primarily on the premise that, even if the contract had made the buyers responsible for satisfying the unpaid balance, plaintiffs have failed to show that the underlying debt would have ultimately been collectible. In support of this theory, the estate relies on the absence of evidence in the record concerning the financial condition of Esker and his associates.

■ A. *Causal showing of actual financial loss.* Although we have referred to collectibility as an element to be established in a claim for professional malpractice, it is essential that in each case this concept be adapted to the chain of causal injury on which the plaintiff's right of recovery depends. Where, as in *Whiteaker v. State*, 382 N.W.2d 112, 114–15 (Iowa 1986), and *Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524, 526 (Iowa 1983), the claim consists of the client's assertion that an existing right to recover money from a specified third person was lost due to professional negligence, the award must be based on the value of the claim against the third party. *Whiteaker*, 382 N.W.2d at 114. In these situations, the

plaintiffs must show not only that a right of recovery could have been established but also that an ascertainable amount could have been collected from the obligor. *Id.* at 114–15.

■ Unlike the situation before the court in *Whiteaker* and *Heasley,* plaintiffs' theory of injury in the present litigation does not involve the loss of an existing right to recover money from a specified third party. The evidence does not indicate that if the nonrecourse clause had been adequately explained to plaintiffs this would have resulted in a contract making Esker and his associates liable for the unpaid principal balance. The transaction originated with an offer from the buyers limiting their liability in the manner specified in the nonrecourse clause. There is no suggestion in the record that they would have agreed to be personally liable for the unpaid contract balance.

Plaintiffs' chain of causal injury, if any, must, therefore, be traced to the denial of an opportunity to sell the property to some other willing buyer for its fair market value. Consequently, proof of damage does not depend on showing the solvency of the defendant buyers who defaulted on the contract. Rather, it depends on showing the availability of other buyers in the marketplace willing and able to buy and pay for the property.

The evidence supporting plaintiffs' loss under this theory of recovery is at least as strong as that which was found to be sufficient in *Burke v. Roberson,* 417 N.W.2d 209, 213 (Iowa 1987). Such showing includes the testimony of defendant Short that plaintiffs' property could have been sold on the real estate market for between $2500 and $2600 per acre at the time of the Esker transaction. The jury could have found that the actions of the defendants caused plaintiffs to accept the offer of the defaulting buyers rather than refusing it and attaining a successful sale to someone else. The circumstances were sufficient, we believe, to sustain the finding of the jury as to the loss suffered by plaintiffs.

■ B. *Timeliness of assertion of damage theory on which plaintiffs now rely.* The Fishel estate contends that plaintiffs' effort to prove damages based on the loss of an opportunity to sell the property to unspecified buyers for its fair market value was not injected into the case until after the trial had begun. It urges that this theory conflicts with the theory of recovery which had been specified in a document filed by plaintiffs in response to a pretrial order requiring specification of damage theories. The estate urges that it was prejudiced by this untimely change in legal theory because it learned of the change too late to counter the evidence that the property could have been sold for $2500 to $2600 per acre.

The document filed by plaintiffs in response to the pretrial order does appear to tie their injury to the price to be paid by the defaulting contract buyers. At the time this document was filed, however, plaintiffs still were maintaining a right to recover under a legal theory that defendants had warranted the collectibility of the Esker contract. That theory was withdrawn prior to the commencement of trial. Notwithstanding the fact that the import of their pretrial statement was recovery of the unpaid contract balance, we believe that the district court did not abuse its discretion in permitting the jury to consider the case under the theory of injury which was shown by the evidence. The theory of recovery to which plaintiffs ultimately resorted was thrust upon them by the factual setting of the transaction.

III. *Sufficiency of the Jury Instructions.*

■ Finally, we consider the Fishel estate's argument that the instructions to the jury were inadequate for purposes of conveying the requirement of collectibility. We disagree.

Although the estate relies on our decision in *Burke,* 417 N.W.2d at 213, to support the claimed inadequacy in the instructions, we believe the instructions in the present case do not suffer from the same omissions found to exist in that case. In *Burke,* the court submitted the case on a

theory of loss of opportunity to sell the property to someone other than the original contract buyers for its fair market value. The instructions did not advise the jury, however, that the plaintiffs in that case had to show that they would have in fact collected an ascertainable sum of money from such a sale.

In the present case, the trial court's Instruction No. 19 advised the jury that, even if it found the defendants were negligent or had breached their contract, plaintiffs could not recover unless the evidence "show[ed] that Plaintiffs would have received some greater amount than the amount actually received [from the down payment and bankruptcy sale] and you shall determine that amount." We believe this language supplies the vital ingredients which were missing in the *Burke* instructions.

We have considered all arguments advanced by appellant and conclude that the judgment of the district court must be affirmed.

AFFIRMED.