**A.C. BENTON, Maynard Plagge, Benton–Plagge Implement, An Iowa Partnership, and Benton–Plagge Farms, Inc., An Iowa Corporation, Plaintiffs–Appellants,**

v.

**David M. NELSEN, Defendant–Appellee.**

No. 92–538.

Court of Appeals of Iowa.

May 4, 1993.

Lawrence L. Marcucci of Higgs, Fletcher & Mack, San Diego, CA, for appellants.

Stephen R. Eckley of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellee.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

SACKETT, Judge.

Plaintiffs-appellants A.C. Benton, Maynard Plagge, Benton–Plagge Implement, an Iowa Partnership, and Benton–Plagge Farms, Inc., an Iowa Corporation, appeal a trial court ruling granting summary judgment and dismissing their legal malpractice action against defendant-appellee David M. Nelsen. Plaintiffs contend the trial court erred (1) in requiring expert testimony that defendant's conduct fell below what is expected of an attorney, (2) in not finding defendant negligent as a matter of law, (3) in finding plaintiffs were estopped from bringing the action, and (4) in ruling Benton–Plagge Implement and Benton–Plagge Farms were not proper parties to the action. We affirm.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Iowa R.Civ.P. 237(c); see Farm Bureau Mut. Ins. Co. v. Milne, 424 N.W.2d 422, 423 (Iowa 1988). Defendant, the moving party here, has the burden to show the nonexistence of a material fact. Milne, 424 N.W.2d at 423. The evidence is viewed in the light most favorable to the plaintiffs, Thorp Credit, Inc. v. Gott, 387 N.W.2d 342, 343 (Iowa 1986), and every legitimate inference that reasonably can be deduced from the evidence should be afforded the plaintiffs. Id.; Sherwood v. Nissen, 179 N.W.2d 336, 339 (Iowa 1970). A fact issue is generated if reasonable minds can differ on how the issue should be resolved, but if the conflict in the record consists only of the legal consequences flowing from undisputed facts, entry of summary judgment is proper. Milne, 424 N.W.2d at 423; Gott, 387 N.W.2d at 343.

Plaintiff A.C. Benton dealt in farm implements and owned farmland and bank stock. In about 1985, he experienced financial difficulties. He had a number of substantial creditors. Benton consulted attorney Nelsen who ultimately filed a bankruptcy petition for Benton. The bankruptcy was dismissed after agreed payments were made to creditors.

This action filed in January 1990 centers on Nelsen's alleged failure to notify A.C. Benton of a memorandum of understanding Nelsen received from Hawkeye Bank, one of A.C. Benton's largest creditors. The memorandum was received on February 11, 1986. Benton did not file bankruptcy until after February 1986.

The trial court found summary judgment was appropriate because (1) expert testimony was required to prove plaintiffs' claims, (2) Nelsen was not negligent as a matter of law since he notified Fred Hepler of the memorandum and Hepler had a plenary power of attorney for Benton, (3) the plaintiffs were equitably estopped due to Benton's failure to notify the bankruptcy trustee of the cause of action, and (4) the partnership and the corporation were not proper parties to the action.

The following facts are not disputed. A.C. Benton had been negotiating with Hawkeye Bank to restructure a personal debt to Hawkeye of over $4,000,000 and a debt owed Hawkeye by Benton–Plagge Implement of over $500,000. Additionally, Benton had a number of other creditors. In early February 1986, following a meeting with Hawkeye Bank officials, Benton came to Nelsen with a handwritten proposal concerning restructure of the debt. Nelsen was not able to understand the handwritten document and on February 5, wrote Hawkeye's attorney asking for a typewritten proposal. On February 11, 1986, Nelsen received in his office in Mason City, Iowa, a typewritten memorandum from Hawkeye Bank with a letter advising if the

Bentons[1] desired to settle on the basis of the memorandum, the Bentons had to execute the same on or before Wednesday, February 12, 1986. On February 11, 1986, A.C. Benton was in Arizona.

As to what happened next, the record is in dispute. Nelsen contends he contacted Fred Hepler. Hepler had a power of attorney for A.C. Benton and was his business manager. The extent of the power of attorney and Hepler's authority to act for Benton in this matter were disputed. Benton claimed Nelsen knew he always made his own business decisions. Nelsen said he told Hepler he had the documents and that they were important and contained deadlines. Nelsen also said Hepler picked up a copy of the letter and memorandum from him on the morning of February 12. Nelsen contends Hepler said he knew how to reach Benton and would notify him of the proposal.

Benton said neither Nelsen or Hepler notified him of the proposal. Hepler said he did not remember getting the proposal but, if he did, he would have communicated it to Benton.

There is also a factual dispute over whether Nelsen knew of Benton's whereabouts on February 11 and 12. Nelsen admitted Benton called him in the afternoon of February 12, and they "discussed the letter but not the contents". In deposition Nelsen was asked:

Q. By the time you talked to Mr. Benton, were you aware as to whether or not he had in fact talked to Mr. Hepler about the February 10 letter of 1986? A. I don't know.

Benton said during the call Nelsen did not talk to him about the letter and memorandum.

The facts, contrary to the trial court's ruling, do create a factual issue as to the steps Nelsen took on receiving the materials from Hawkeye Bank and on whether Nelsen contacted Hepler about the materials.

The next question is whether, considering the facts in the light most favorable to plaintiffs, there is substantial evidence to support a finding Nelsen was negligent. The trial court, also, found plaintiffs' claim failed because there was no expert testimony Nelsen's conduct fell below that expected of an attorney.

■ Expert testimony that an attorney's conduct is negligent is necessary unless proof is so clear a trial court can rule as a matter of law that the professional failed to meet an applicable standard or the conduct claimed to be negligent is so clear it can be recognized or inferred by a person who is not an attorney. *See Martinson Mfg. Co. v. Seery*, 351 N.W.2d 772, 775 (Iowa 1984); *Baker v. Beal*, 225 N.W.2d 106, 112 (Iowa 1975); *Koeller v. Reynolds*, 344 N.W.2d 556, 561 (Iowa App.1983).

Plaintiffs were precluded from introducing expert testimony Nelsen was negligent. Iowa Code section 668.11 required plaintiffs to file a designation of expert witnesses within 180 days of defendant's answer. Plaintiffs failed to file the required designation, failed to timely answer defendant's interrogatories seeking names of experts, and made no application to extend the time for designation of experts until after it had expired. When plaintiffs filed an application to extend the deadline for designating experts, the trial court found they should not be allowed additional time. We, therefore, look at the evidence in the light most favorable to plaintiffs to see whether Nelsen's negligence is so clear it can be recognized or inferred by a person who is not an attorney. *Martinson Mfg.*, 351 N.W.2d at 775.

There is evidence Nelsen did not mention or communicate the contents of the letter and memorandum he received on February 11, to A.C. Benton when talking to Benton on February 12. There is also evidence Hepler did not remember getting the memorandum and, if he had, he would have given it to Benton. This testimony, coupled with Benton's testimony he did not

---

1. The memorandum called for the signatures of A.C. Benton and Neva C. Benton. Neva C. Benton is not a party to the litigation.

know about the letter and memorandum until two years later, could support an inference, if believed, that Nelsen did not communicate to either Hepler or Benton the contents of the letter and memorandum and that Nelsen received the communication and it contained deadlines.

If Benton's version of the facts were believed and Nelsen did not communicate the contents of the memorandum and the deadline when Nelsen talked to him on February 12, we agree with plaintiffs that the negligence would be so clear that expert testimony would not be necessary. *See Baker*, 225 N.W.2d at 112 [2].

■ However, our inquiry does not end here. To establish a prima facie claim of legal malpractice, plaintiffs must introduce substantial evidence that shows (1) the existence of an attorney-client relationship giving rise to a duty, (2) the attorney, either by an act or failure to act, violated or breached that duty, (3) the attorney's breach of duty proximately caused injury to his or her client, and (4) the client sustained actual injury, loss, or damage. *Dessel v. Dessel*, 431 N.W.2d 359, 361 (Iowa 1988).

■ Plaintiffs have the obligation to show proof of damage proximately caused by defendant's negligence. *See Whiteaker v. State*, 382 N.W.2d 112, 114 (Iowa 1986). To recover, plaintiffs must show, but for the attorney's negligence, they would not have suffered a loss. *Blackhawk Bldg. Sys., Ltd. v. Law Firm of Aspelmeier, Fisch, Power, Warner & Engberg*, 428 N.W.2d 288, 290 (Iowa 1988); *Burke v. Roberson*, 417 N.W.2d 209, 211 (Iowa 1987). In a legal malpractice action, the general measure of damages is the amount of loss actually sustained as a proximate result of the attorney's conduct. *Dessel*, 431 N.W.2d at 362; *Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524, 525 (Iowa 1983).

In moving for summary judgment, defendant also advanced there was no evidence his negligence caused plaintiffs' damage. Plaintiffs did not respond directly to this contention in their resistance. The trial court found it unnecessary to address this issue. Defendant urges in his brief that this is another ground for affirmance. Plaintiffs have not addressed the issue in their reply brief. We are bound to affirm the trial court for any reason whether argued or not. *See State v. Vincik*, 436 N.W.2d 350, 354 (Iowa 1989). We, therefore, look to whether there is substantial evidence Nelsen's conduct was a proximate cause of damaging plaintiffs.

■ To show they were damaged, plaintiffs must present evidence that would show they would have obtained a superior result. *Shannon v. Hearity*, 487 N.W.2d 690, 692 (Iowa App.1992). To show they would have obtained a result superior to the result they obtained, plaintiffs must present evidence showing the difference between the result they would have realized had they been notified of the letter and their situation following their settlement with creditors through the bankruptcy. *See Burke*, 417 N.W.2d at 212.

On February 27, 1991, plaintiffs answered an interrogatory asking to itemize all damages claimed as a result of the allegations in the petition as follows:

At this time plaintiffs are unable to answer this interrogatory. Plaintiffs will supplement this answer.

On January 13, 1992, when defendant's motion for summary judgment was filed, the answer still had not been supplemented [3].

Benton states in his affidavit if he had known of the memorandum, he would have signed it and it would have reduced the amount owed to Hawkeye Bank by some $1,400,000 and this settlement would have

---

**2.** We do agree with the trial court that if the fact finder determined Nelsen had given the papers to Hepler, expert testimony would be necessary to establish this was negligence.

**3.** Plaintiffs' lawsuit was filed January 9, 1990. On March 26, 1990, defendant served interroga-

tories seeking to have plaintiffs itemize their damages. The March 26, 1990 interrogatories were not answered until February 23, 1991, at which time plaintiffs could not itemize damages and as of April 6, 1992, the last docket entry in the trial court, the answer had not been supplemented.

reduced his personal obligations as well as the obligations of the partnership.

The memorandum was very complicated and contained substantial requirements for Benton, including the restructuring of debt, the assignment of stock in the Lone Rock Bank, the payment of monies from the sale of crops, and the transfer of contracts receivable of Benton and Plagge. Benton was further required to represent the equity in certain contracts was $673,000. Further, A.C. Benton and Neva Benton were to obtain a one-half interest, that they did not own in a contract and deliver the contract to Hawkeye. The memorandum required principal payments of $6500 a month on a new $2,000,000 note with interest payable at nine percent. The note was to balloon in 1991. Bentons were required to execute a second note for $1,000,000 and make principal payments of $30,000 annually with interest payable at eight percent. That note was to balloon in 1991. The notes were to be secured by a number of assets.

Defendant contends plaintiffs have not shown the agreement would have been signed by Hawkeye. There was evidence Hawkeye would not have signed the agreement. There was no showing Hawkeye would have signed the agreement. The depositions raise the question of whether the memorandum was intended to reduce Benton's indebtedness to Hawkeye.

There is no evidence Benton could comply with the extensive provisions of the agreement. There is no evidence Hawkeye would have agreed to a settlement that reduced Benton's financial obligation to Hawkeye. Reviewing all available evidence in the light most favorable to plaintiffs, we find they have failed to show substantial evidence to support a finding Nelsen's negligence, if any, was a proximate cause of their being damaged.

There is no evidence to allow a fact finder to infer Hawkeye would have agreed to the terms of the memorandum or that it would have reduced Benton's financial obligation to Hawkeye. There is no evidence Benton could have complied with the numerous and substantial obligations the memorandum required. *See Blackhawk,* 428 N.W.2d at 291.

We affirm the trial court's decision. Plaintiffs have failed to show there is a material issue of fact on the question of proximate cause.

This holding is dispositive of the other claims plaintiffs raised on appeal.

**AFFIRMED.**